Chad Belville IA Bar 015731
4742 North 24th Street Suite 315
Phoenix, AZ 85016
602-904-5485
FAX 602-297-6953
cbelville@azbar.org
Attorney for Plaintiff


# UNITED STATES DISTRICT COURT
# IN AND FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION


| | | |
|---|---|---|
| FRASERSIDE IP LLC,<br>An Iowa Limited Liability Company<br><br>Plaintiff,<br><br>vs.<br><br>Sergej Letyagin, dba SunPomo.com,<br>www.sunpomo.com,<br>John Does 1 - 100,<br>and John Doe Companies 1-100,<br><br><br>Defendant(s). | | No. 11-cv-03041-MWB<br><br>**PLAINTIFF'S RESISTANCE TO DEFENDANTS SERGEJ LETYAGIN AND WWW.SUNPORNO.COM'S MOTION TO DISMISS** |

_____

COMES NOW, Plaintiff Fraserside IP LLC, by and through its counsel, Chad Belville, and RESISTS Defendants Sergej Letyagin and www.SunPorno.com's Motion to Dismiss in its entirety. In support of it Resistance to Motion, Plaintiff provides the attached Brief and Attachments. Oral argument is requested.

1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………........................……..3

OPENING STATEMENT………………………………………………………………………..5

STATEMENT OF FACTS …………………………………………………….…....…….8

      Parties

      Fraserside IP LLC

      Fraserside Holdings and Private Media

      Defendants

LAW AND ARGUMENT …………………………………………………………...…….10

I.    Plaintiff Resists Defendant's Motion to Dismiss for Lack of Personal Jurisdiction..10

      a.  The Standard for Granting a Motion to Dismiss for Lack of Personal Jurisdiction

      b.  The Standard for Finding Personal Jurisdiction over a Defendant

      c.  Defendant's Internet Activities Establish Personal Jurisdiction

      d.  The Court should not Dismiss for Forum Non Conveniens

II.    THE COURT SHOULD EXERCISE JURISDICTION UNDER RULE 4(k)(2),

      F.R.Civ.P……………………………………………………………………..…….24

III.    THE COURT SHOULD PERMIT JURISDICTIONAL DISCOVERY…………….30

CONCLUSION ……………………………………………………………………..…..38

**TABLE OF AUTHORITIES**

*Medica Self-Insured v. Tenet Healthcare Corp.*, 2007 WL 1385589 (D. Minn. 2007)…..…....…11

*Jenisio v. Ozark Airlines, Inc., Retirement Plan*, 187 F.3d 970, 972 n. 3 (8th Cir. 1999)…..….11

*Silver v. H & R Block, Inc.*, 105 F.3d 394, 397 (8th Cir. 1997)……………………...………..11

*Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991)
………………… 17, 27, 28, 29

*Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741 (8th Cir. 2011)………………….....…17, 18

*Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir.1992) (per curiam)……………..18

*Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir.2008)…………………………..…………18

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 (1984)……..……...18

*Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985)…………………………..…………18

*Brown v. Kerkhoff*, 504 F. Supp. 2d 464, 504 (S.D. Iowa 2007)…………………..………19

*Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010)………………………………..………19, 35

*Lakin v. Prudential Sec., Inc.*, 348 F.3d 704 (8th Cir.2003)……………………..19, 20, 30, 36, 37

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997)……...……19, 21

*Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir.2002)……..…….……..20

*Bird v. Parsons*, 289 F.3d 865, 874-875 (6th Cir. 2002)…………………………………...….……20

*CYBERsitter, LLC v. People's Republic of China*, 2011 WL 3322552 (C.D. Cal. 2011)
…… 21, 23, 24, 25, 27, 29

*Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)…………..…..…22, 28, 29

*Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284 (9th
Cir.1997)……………………………………………………………………..…..…...…23, 24

*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010)…...…20, 25

*Jagex Ltd. v. Impulse Software*, 750 F. Supp. 2d 228, 233 (D. Mass. 2010)…………….……25

3

*Furminator, Inc. v. Wahba*, 2011 WL 3847390 (E.D. Mo. 2011)………..……………….…..26, 27

*3M Co. v. Mohan*, 2010 WL 786519, 1–3 (D.Minn. 2010)……………….…………..………26

*Bose Corp. v. Neher*, 2010 WL 3814886 (D.Mass. 2010)……………..…..……………….27

*Zen Design Group, Ltd. v. Clint*, 2009 WL 4050247, 3 (E.D.Mich. 2009)……..….…..…..….27

*Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co. KG*, 2010 WL 2402834 (E.D. Mo. 2010) aff'd sub nom, 646 F.3d 589 (8th Cir. 2011)…………………………...…..………..27

*P.S. Products, Inc. v. Alibaba.com Inc.*, 2011 WL 861164 (E.D. Ark. 2011)……………...……27

*David White Instruments, LLC v. TLZ, Inc.*, 2003 WL 21148224 (N.D.Ill.2003)……..……...28

*Brainerd v. Governors of Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir.1989) …...……..……29

*Haisten v. Grass Valley Medical Reimbursement*, 784 F.2d 1392, 1397 (9th Cir.1986)……..…29

*Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 508-509, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)..
…………….. 30

*Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1336-37 (9th Cir. 1984)………………….…31, 32

*American Rice, Inc. v. Arkansas Rice Growers Co-op. Ass'n*, 701 F.2d 408, 417 (5th Cir. 1983)
……………………………………………………………………………………… 31

*Reid–Walen v. Hansen*, 933 F.2d 1390, 1396 (8th Cir.1991)…………………………..…….32

*Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1414 (Fed. Cir. 2009)……..………32, 33, 34

*Getz v. Boeing*, 654 F.3d 852, 858 (9th Cir.2011)……………………………………………32

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico*, 563 F.3d 1285, 1297 (Fed.Cir.2009)………………………………………………………………….……...32

*Oldfield v. Pueblo De Bahia Lora*, S.A., 558 F.3d 1210, 1219 n. 22 (11th Cir.2009)…………..33

*Adams v. Unione Mediterranea DI Sicurta*, 364 F.3d 646, 651 (5th Cir. 2004)…………...……33

*Mwani v. bin Laden*, 417 F.3d 1, 11 (D.C. Cir. 2005)……………………………………..33

*ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 551-52 (7th Cir.2001)……..……33

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir.2007)……………33

*Principal Fin. Services, Inc. v. Big Fin. & Ins. Services, Inc.*, 426 F. Supp. 2d 976, 982 (S.D. Iowa 2006)………………………………………………………………….…...36, 37

4

*Fishel v. BASF Group*, 175 F.R.D. 525, 528 (S.D. Iowa 1997)……………………………..36

*Radaszewski v. Contrux, Inc.*, 891 F.2d 672, 674–75 (8th Cir.1989) (Radaszewski I)……..…36

*Majd–Pour v. Georgiana Community Hosp., Inc.*, 724 F.2d 901, 903 (11th Cir.1984)……..36

Statutes

Other Authorities

Richard E. Kaye, J.D., Annotation, *Internet Web site activities of nonresident person or corporation as conferring personal jurisdiction under long–arm statutes and due process clause*, 81 A.L.R. 5th 41
(2000)…………………………………………………………………………….………..19


Federal Rules of Civil Procedure 4(k)(2)……………………………….………32, 33, 35

Federal Rules of Civil Procedure 8(d)(2)……………………………………………….34

Federal Rules of Civil Procedure 12(f)……………………………………..………..33

5

This case belongs in Iowa. The website SunPorno.com is displaying copyrighted videos owned by Plaintiff, an Iowa company. Defendant is an alien entity, purporting to operate outside the United States and outside the jurisdiction of any United States Court. Plaintiff joined the Defendant's website from Iowa. Defendant targets advertising directly at Iowa residents. The harm is being done in Iowa and aimed at an Iowa company. If not this Court, what court? Can entities operate outside the United States, sell advertising and memberships to U.S. residents with a business model built upon infringing U. S. copyright and trademark holders with impunity? Has the Internet created a loophole in our system of laws so large that multi-million dollar piracy operations can take place over U.S. communication systems, taking U.S. dollars from unknowing U.S. consumers and the modern day pirates thumb their noses at all attempts for redress?

The Plaintiff says No. Given the facts , the Rules, and case law, the Defendants are properly before this Court.


Claim: Sergej Letaygin has no interest in Sunporno.com

      Truth: Sergej Letaygin owned the domain Sunporno.com in his own name until he was named in this lawsuit. The domain was then transferred to an alter ego of Letaygin.


Claim: An entity named Ideal Consult, Ltd. owns and operates the website Sunporno.com

      Truth: Ideal Consult Ltd. is a shell company and is the alter ego of Letyagin, created specifically for the purpose of thwarting claims against the website Sunporno.com

Claim:  Sunporno does not advertise in Iowa.

Truth:  Sunporno serves advertising that is directly marketed to Iowans.


Claim: Sunporno.com does not have a premium membership available.

Truth: Sunporno.com does have a premium membership available, and the join sequence directly from a Fraserside video is attached.


Claim: Sunporno.com has no control over the advertising placed on the website and a Spanish company called ExoClick controls all the advertising.

Truth:  Sunporno.com is not only responsible for the advertising on its property, but the advertising arm, TGP Alliance, appears to also be owned or controlled by Sergej Letaygin.  The number of alter egos, created for the purpose of thwarting claims against the website, is unknown.


Claim:  Sergej Letyagin and Sunporno.com have no connections to anything and cannot be sued in the United States.

Truth:  Sergej Letyagin has created a tangled web of interwoven entities, shell companies and alter egos to throw roadblocks before any claims against his websites.  The true extent of the smoke and mirrors cannot be known without further discovery, but all trails lead to Sergej Letyagin.

**Facts**

**The Parties**

**Fraserside IP, LLC**

Plaintiff Fraserside IP LLC is the rightful owner of copyrights and trademarks in high quality brand driven adult motion picture films. Contrary to Defendants' unsupported allegations that Plaintiff does no actual business, Plaintiff, as successor in interest to sister and parent organizations, is engaged in the business of producing, distributing, and/or licensing to others the rights to copy, distribute, transmit and exhibit those copyrighted films and/or other audio visual works. It is astonishing that Defendant counsel would continue make this claim after an attorney travelled from Cedar Rapids to Northwood on behalf of Defendant's local counsel and personally met Plaintiff's counsel at Plaintiff's office.  Plaintiff and/or its parent and sister companies expend significant amounts of time, money and other resources to produce high quality products, develop supply chains and distribution systems, and build premium brand recognition of their products. Complaint, ¶ 5, p. 5.

Plaintiff is also the holder of certain Trademarks, including a depiction of two female silhouettes, the Private and Private Gold Labels and the Private Life of that have been actively promoted and marketed. As a result, the purchasing public has come to know, rely upon and recognize these marks as an international brand of high quality entertainment. Complaint, ¶ 5-15. Plaintiff does business, either directly or through affiliates or licensees, by distributing its copyrighted works in various forms, without limitation, over the Internet, pay-per-view, video on demand, DVD's, and other formats, by selling them directly or indirectly to the home viewing

8

market or licensing others to do so and through Internet streaming and download services.

Complaint, ¶ 5, p. 5.


Defendants make vague allegations that Plaintiff does not actually have any ownership of the trademarks or the copyrighted videos. Notably, however, it has not presented any evidence to support these allegations even in the face of evidence to the contrary presented to Defendant's counsel in other similar cases.

Plaintiff is an Iowa Limited Liability Company. Despite Defendants' unsupported assertions that it is an entity with only a mail drop box created to establish jurisdiction in Iowa, Plaintiff does engage in business with Iowa residents. In 2010, for instance, it or its sister or parent companies shipped over 400 orders to Iowa residents and delivered nearly 2,000 orders online to Iowa customers. Complaint ¶ 5, p. 4.  It is much more likely that Defendant's claimed location in The Republic of Seychelles is nothing more than a post office box containing a shell company created for the purpose of evading authority.  Even more surprising is that an entity that admits its primary business in adult enterprises would chose to locate in a nation where pornography is prohibited (*See* www.republicofseychelles.com, official website, last visited 26 February 2012).  Given the location of Seychelles off the coast of Kenya, the small population under 90,000 residents *(Id.),*and the local laws against pornography, it is likely that Defendant and all persons related to Defendant website have never resided in or visited Seychelles. According to IP Trace Location, SunPorno.com is controlled by a nameserver in Kansas. Exhibit A.  According to WhoIs, Sunporno.com is hosted not in Seychelles but Ohio and Amsterdam. Exhibit B About SunPorno Servers and Exhibit C Server Location.  Of all the things Defendant Sergej Letyagin claims he and the entity Ideal Consult Ltd., a Seychelles entity, did not do in

9

Iowa, (have employees, own real estate, pay taxes, and have a bank account) it is quite likely they did not do those things in Seychelles either. To claim an offshore post office box as a place of business and then make the assertions Fraserside IP is a fraud is an ironic twist and should call Defendant's credibility into question.

Further, Plaintiff is a member of the Northwood, Iowa Chamber of Commerce and has committed to sponsorship of the Chamber's 4th of July celebration. Fraserside is also rebuilding the Northwood Chamber of Commerce website. There are three people working at Fraserside's Northwood offices, every day, in full-time positions researching copyright infringement. All were previously unemployed. Plaintiff is no mere shell company, but instead is a growing company based in Iowa and providing jobs to Iowa residents. Exhibit D, Declaration of Jason Tucker.

### Fraserside Holdings and Private Media

Defendants find it necessary to discuss non-parties to the lawsuit in an effort to muddy the waters. Since Fraserside Holdings is not a party to this action, its arguments in other courts and other cases unrelated to this one have no bearing whatsoever. The fact that Private Media is a Nevada company and the parent of Fraserside Holdings as well as Fraserside IP LLC is also irrelevant.

### Defendants

While Defendants provide various data points of parental lineage of Plaintiff in great detail, they provide nothing as to the ownership of SunPorno website. Letyagin asserts that he does not own the website, it is owned by Ideal Consult, Ltd. He does not mention who owns Ideal, or who owns the company who owns Ideal. Defendant Letyagin, the ultimate owner of Sunporno through layers of entities, is playing a shell game to evade responsibility for his

10

ownership of the website. Defendant has provided evidentiary materials to dispute the matter of ownership but the WhoIs history for SunPorno.com clearly shows that Defendant Letyagin is in fact the owner of the website. He is listed as the registrant, the administrative contact, the billing contact and the technical contact. Exhibit E WhoIs SunPorno.com August 31 2011. Defendant Sergej Letyagin admits ownership in email communication between himself and a Fraserside representative Exhibit F Emails between Defendant Sergej Letyagin and Jason Tucker. This also should call Defendant's credibility into question. Plaintiff has already accused Defendant of being a thief; it is difficult to resist using the term "liar" as well.

Further, this factual dispute requires the court to permit discovery. Where the argument is that the wrong person has been sued, this is raised by a Motion to Dismiss under 12(b)(6). See, e.g., *Medica Self-Insured v. Tenet Healthcare Corp.*, 2007 WL 1385589 (D. Minn. 2007). On a motion to dismiss pursuant to Rule 12(b)(6), the court ordinarily cannot consider matters outside of the pleadings, unless the court converts the Rule 12(b)(6) motion into a motion for summary judgment pursuant to Rule 56. See FED. R. CIV. P. 12(b)(6); see also Buck v. F.D.I.C., 75 F.3d 1285, 1288 & n.3 (8th Cir. 1996). In particular, the Court may not consider affidavits and documents submitted to dispute the allegations of the Complaint unless it gives notice that it is converting the motion to a summary judgment and provides proper opportunity to Plaintiff to respond. *Jenisio v. Ozark Airlines, Inc., Retirement Plan*, 187 F.3d 970, 972 n. 3 (8th Cir. 1999) (citing *Silver v. H & R Block, Inc.*, 105 F.3d 394, 397 (8th Cir. 1997)). Therefore, the Court should convert this Motion to Dismiss to a summary judgment and permit discovery to take place before any response is due.

The SunPorno.com website is visited by over 2,500,000 internet surfers per day. [Complaint Attachment 1 Compete.com results with estimates and public details]. Alexa, a

website rating service, ranks SunPorno.com as the # 923 most visited website in the world. [Complaint Attachment 2 Alexa Ranking]. For comparison purposes only, Google.com and Facebook.com are ranked 1 and 2, respectively. On August 17, 2011, sites with more traffic than the Defendant per Alexa include LinkedIn at # 13, Microsoft at # 28, Apple at # 34, CNN.com at # 53 and Sears at # 823. Websites that have less traffic than the Defendant include such widely known entities as hotmail.com at # 1,927, NFL.com at # 1,136 and americanairlines.com at # 1,187. Defendant is arguably one of the most visited websites in the world. A full 17.8 % of its traffic comes from the United States. Complaint Attachment 2 Alexa audience statistics for SunPorno.com. These enormous numbers of visitors result in Plaintiff's copyrighted works being viewed tens of thousands or even millions of times on Defendants' website. The number of Iowa-based views per month can only be determined during discovery, however each of the infringements claimed in the Complaint was documented from Fraserside's Northwood, Iowa offices. (Complaint ¶ 23).

Defendants assert by affidavit that SunPorno.com does not itself offer premium membership, because once a person clicks on the "premium membership" button, they are sent to a website which Defendants did not control and could not control. This is not the case at all when one visits the website. The FAQ page clearly indicates that viewers can obtain the high definition videos by signing up for premium membership. Exhibit P, SunPorno Frequently Asked Questions. It also contains information on what to do if a copyrighted video is found on Sunporno – it permits a report to SunPorno about the abuse. *Id.*

In addition, the attached screen shots of the sequence to join as a premium member shows that the person is directed to a website page on SunPorno.com: "Sunporno.com/premium.php." This series of screen shots starts at a copyrighted video owned by Fraserside IP LLC and follows

the steps that the surfer takes to JOIN the Sunporno premium membership site. At the bottom of that premium sign up page are links for Terms of Service, DMCA statement, and 2257 Compliance notice that all go to webpages that begin with www.Sunporno.com. Exhibit G Join Sequence on Sunporno.com; Exhibit M, SunPorno Terms of Service; Exhibit Q, Sunporno DMCA Statement; Exhibit R, Sunporno 18 U.S.C 2257 Notice. Defendant's affidavit thus appears to be incorrect in this regard and possibly even intentionally misleading. However, even if the premium membership sign up did send a person to another website, this would not relieve Defendants of liability or deprive the court of jurisdiction. An owner has complete control over what is shown on its website. SunPorno set up the premium membership, and if in fact this means that SunPorno is sending surfers to join websites other websites, SunPorno still has financial benefit. The referral to another site is not done out of the goodness of SunPorno's heart. It is done for compensation, and the reason the internet surfer has gotten that far is due to the stolen content appearing on Defendant's website. See Exhibit D Declaration of Jason Tucker.

Defendant makes the audacious claim that it has no control over the advertising on its website. Not only does this statement fly in the face of logic, evidence shows it to be untrue. Advertising may be sold by Exoclick, but Defendant's affidavit does not say ALL advertising is sold by Exoclick. In fact, while Exoclick may sell SOME advertising on the website, the links DIRECTLY from Sunporno.com for potential advertisers leads to TGP Alliance.com. Exhibit H Screenshots of Join sequence. At the bottom right corner of the Sunporno webpage is a link "Advertise". This link goes directly to the webpage TGPAllicance.com where details of advertising opportunities on SunPorno.com are provided. Exhibit Why would Defendant infer that ExoClick sells all the advertising on SunPorno.com if the link DIRECTLY from Sunporno.com for advertisers leads to TGP Alliance?

13

The TGP Alliance website claims "TGP Alliance owns and operates over 50 free adult sites, running over 3,500,000 unique hit per day." See Exhibit H TGP Alliance Homepage. Then, the TGP Alliance lists its websites, with SunPorno listed as one of its "gold" websites. Exhibit I TGP Alliance Network list of sites. The SunPorno.com website ITSELF confirms this relationship at sunporno.com/webmasters/ where it says, "SunPorno is part of the www.tgpalliance.com network" Exhibit J TGP Alliance acknowledged by SunPorno. Given all this, how does Defendant make the claims that SunPorno does not control its own advertising?

There is evidence that Defendant Sergej Letaygin also owns and operates the website TGP Alliance. Defendant Sergej Letaygin's alter ego at TGP Alliance is "Donald Green" See Exhibit F Emails Between Defendant Sergej Letyagin and Jason Tucker. Defendant Sergej Letyagin uses the alter ego Donald Green in relation to both TGP Alliance and Sunporno. Defendant Sergej Letyagin uses the email account tgpalliance@gmail.com and the ICQ name Donald Green. See Exhibit F Emails between Defendant Sergej Letyagin and Jason Tucker and Exhibit K Skype Chat Log Between Sergej Letyagin and Jason Tucker. The email addresses and Skype name tie it all together and it is readily apparent that Sergej Letyagin and Donald Green are one and the same, and readily apparent that Sergej Letyagin is the ultimate owner and operator of both TGP Alliance and SunPorno. In both the Skype chat and the emails, Defendant Sergej Letyagin represents himself as the owner of Sunporno. What is most damning in the Skype conversation is not the tie-in among Donald Green, Sergej Letyagin, SunPorno.com and TGP Alliance, but the ADMISSION OF OWNERSHIP by Defendant Sergej Letyagin at 12:11:51 AM 9/28/2011. Exhibit K Skype conversation. Letyagin negotiates as the owner of the website until he retained counsel, and then he denies ownership entirely in his declaration. This

14

is not the action of an honest man. He acknowledges this suit, discusses it, claims he owns it but cannot pay, and then denies responsibility entirely.

Although Defendant claims Sunporno has no say in the advertising on its own property, it is absurd to think the Defendants do not control the advertising on their own website, and the declaration of the Defendant contains untruths if not outright attempts to mislead the Court.

In addition to the email and Skype conversations, there is more evidence on the TGP Alliance website of the connections. On the TGP Alliance network website, advertisers are solicited to pay for ad placement on TGP Alliance network sites. When an advertiser desires to purchase advertising, that advertiser is directed to "Purchase Spots" at tgpalliance.com/purchase.html. On that page, under the option EPASSPORTE, the potential advertiser is instructed to "Send the amount of money you wish to deposit to Epassporte account latouraine_sergej specifying the following info in comments….". Exhibit L Sergej Account for TGP Alliance. This account ownership, assumed to be in the same Sergej who is a named defendant here can only be confirmed through the discovery process.

Every path leads back to Sergej Letyagin, aka Donald Green.

Defendants solicit internet salespeople to send surfers, or "traffic" the Defendant website. Defendants pay third parties to send web users to Defendants' website. Defendant currently pays third parties up to $1.20 in U.S. Dollars for every one thousand (1,000) unique visitors sent to Defendant's website from "Good countries." The first listed good country is the United States. [See Attachment 3, SunPorno's Partnership Program web page]. Defendants' premium membership permits payment in U.S. dollars, and is thus targeted to United States citizens. (Complaint ¶ 23). SunPorno also invokes U.S. trademark and copyright laws in its terms of service. Exhibit M, Terms of Service.

15

Defendants' website encourages users to set up their own profiles, become involved with other users, and interact with the host computer to do so. (Complaint Attachment 2-6). SunPorno.com is an interactive website, and users and members have 24 hour access to its content. The website provides for ongoing interaction with the host computer by permitting uploads to the host computer, and downloads of premium videos from the host computer. (Complaint Attachment 2-6).

Customers or potential customers of Plaintiff are lost when Defendant gives away Plaintiff's goods without benefit to Plaintiff. Defendants have actual knowledge and clear notice of this extensive infringement of Plaintiff's titles. The infringement is clear and obvious even to the most naïve observer. Complaint ¶ 45.

Defendant Because of Defendants knowledge of the high value of Plaintiff's trademarks and copyrighted videos, Defendants' infringement of Fraserside's copyrights and trademarks is aimed at Plaintiff, who is located in Iowa. For the same reason, the infringement is aimed at harming Plaintiff in its business, and Defendants knew and know that Plaintiff was an American company located in Iowa and was aware that Defendants' infringing activities would cause Plaintiff to lose profits.  Even if Defendant did not know the Plaintiff was an Iowa company, Defendants knew that it was infringing on *somebody's* content.  Complaint ¶ 45.

Last, Defendants' website contains geographically targeted advertising. When a person in Iowa logs on to the website, that Iowa resident is served with ads specific to his/her location a pop-up ad appears. Recently, a Fraserside employee logged on to the SunPorno website to have a pop-up advertise "find f**k buddies in Northwood." The Fraserside office is located in Northwood, Iowa.  Exhibit N, Screen Grabs Showing Targeted advertising. Another screen grab shows an advertisement  saying "Find sexy girls near Northwood" with a picture of a young

16

woman "loovyloo" in Hanlontown. Exhibit O Targeted advertising Hanlontown. This is presumably Hanlontown, Iowa, population 225 which is a few miles south west of Northwood. http://www.city-data.com/city/Hanlontown-Iowa.html last visited February 26, 2012. Clearly, Defendants are targeting and engaging Iowa residents with its website.

Discovery is necessary to demonstrate the full quantum of contacts Defendants have with Iowa, but Defendant website has targeted Iowa residents with its commercial advertising.

I. **Plaintiff Resists Defendants' Motion to Dismiss for Lack of Personal Jurisdiction**

    A. **The Standard for Granting a Motion to Dismiss for Lack of Personal Jurisdiction**

Plaintiff bears the ultimate burden of proof on the issue of personal jurisdiction over the Defendants. However, "jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing." *Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991). To defeat a motion to dismiss for lack of personal jurisdiction, Plaintiff here need only make a prima facie showing of jurisdiction. *Id.* "If the district court does not hold a hearing and instead relies on pleadings and affidavits, as it did here, the court must look at the facts in the light most favorable to the nonmoving party,… and resolve all factual conflicts in favor of that party." *Id.*; *See also, Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741 (8th Cir. 2011).

In an effort to defeat personal jurisdiction, Defendants have submitted an affidavit that refutes facts set forth in the complaint and includes information about how SunPorno's premium membership works and how its advertising works. Plaintiff has contested those facts with screen shots of the Defendants' website showing that premium membership does exist on SunPorno.com. This dispute of facts should require conversion of the Motion to Dismiss to a

17

Motion for Summary Judgment, discussed *supra*. Where the court relies on pleadings and affidavits to determine whether Plaintiff has made a showing of personal jurisdiction over the Defendants, "the court must look at the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party." *Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 745 (8th Cir. 2011).

### B. The Standard for Finding Personal Jurisdiction Over a Defendant

As Defendants note, Iowa's long-arm statute extends personal jurisdiction over nonresidents to the fullest extent permissible under the Due Process Clause. See Iowa R. Civ. P. 1.306. *Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir.1992) (per curiam). Therefore, this Court only needs to examine whether the exercise of personal jurisdiction over Defendants comports with due process. *Hicklin*, 959 F.2d at 739.

"The Supreme Court has recognized two theories for evaluating personal jurisdiction: general and specific jurisdiction." *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir.2008) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 (1984)). General jurisdiction arises when a defendant has carried on in the forum state a continuous and systematic, even if limited, part of its general business, and if so, the injury sued upon need not have any connection with the forum state." *Steinbuch*, 518 F.3d at 586.

"Specific jurisdiction on the other hand is appropriate only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities." *Id.*; *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985).

18

### C. Defendants' Internet Activities Establish Specific Personal Jurisdiction

"The continuous and illimitable presence of the internet has required fashioning special rules for applying the traditional due process test." *Brown v. Kerkhoff*, 504 F. Supp. 2d 464, 504 (S.D. Iowa 2007). The "traditional territorial notions of personal jurisdiction, …have required re–examination in recent years in light of technological advances and the increasing globalization of the economy. Commercial uses of the Internet, in particular, have tested the limits of a territorial–based concept of jurisdiction." Richard E. Kaye, J.D., Annotation, *Internet Web site activities of nonresident person or corporation as conferring personal jurisdiction under long–arm statutes and due process clause*, 81 A.L.R. 5th 41 (2000).

"When considering the sufficiency of internet contacts under a **<u>specific</u>** jurisdiction analysis, [the Eighth Circuit has] found the *Zippo* test instructive." *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010), citing *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704 (8th Cir.2003). Lakin, 348 F.3d at 710–11. In *Zippo Mfg. Co. v. Zippo Dot Com, Inc*., the court examined the issue of whether a website could provide sufficient contacts for specific personal jurisdiction. 952 F.Supp. 1119, 1124 (W.D.Pa.1997).

In *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Pa.1997), the court devised a "sliding scale" approach to determine the nature and quality of the Internet activity. At one end of the spectrum, a defendant clearly does business over the Internet. Thus, "[i]<u>f the defendant enters into contracts with residents of a foreign jurisdiction that involve knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper</u>." *Zippo*, 952 F.Supp. at 1124. At the other end is the website that is passive, only making information available to the public, and providing no grounds for personal jurisdiction. In the middle are cases of interactive websites allowing users to exchange information with the host computer. *Id*.

19

In *Lakin,* the Eighth Circuit "agree[d] with our sister circuits that the Zippo model is an appropriate approach in cases of specific jurisdiction-i.e., ones in which we need only find 'minimum contacts.'" *Lakin*, 348 F.3d at 711. As *Zippo* teaches, defendants using websites to enter into contracts with residents and engage in knowing and repeated transmission of Internet files can constitute the purposeful availment of the privilege of acting in a forum state.

In *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir.2002), the Sixth Circuit addressed a trademark infringement case. The defendant company accepted blood for testing and accepted payment from residents in Michigan, giving them passwords to access the results over the Internet. The court found that establishment of a paid area accessible only to members is characteristic of a website with a high degree of interactivity. *See Neogen*, 282 F.3d at 890-91. The Court held that Neogen had presented a prima facie case that NGS transacted business in Michigan by showing the interactive nature of the website. "The granting of passwords to Michigan residents as part of a contract for NGS's services is an interactive usage showing that NGS has intentionally reached out to Michigan customers and enabled them to use NGS's services from Michigan." Thus, the court found it appropriate to exercise specific jurisdiction over the defendant, NGS. *Id*.

Likewise, in *Bird v. Parsons*, 289 F.3d 865, 874-875 (6th Cir. 2002), the Sixth Circuit court held that the defendants, by maintaining a website on which Ohio residents could register domain names and by allegedly accepting the business of Ohio residents, satisfied the purposeful-availment requirement and were subject to specific jurisdiction. There, the fact that the defendant regularly chose to do business with Ohio residents was sufficient. *Id*.

Here, Defendants' website is not a mere passive website such as those at the bottom of the Zippo sliding scale. The SunPorno website does much "more than make information

20

available to those who are interested in it." *Zippo Mfg*., 952 F.Supp. at 1124. The website falls on that end of the spectrum "where a defendant clearly does business over the Internet" by "enter[ing] into contracts with residents of a foreign jurisdiction that involve knowing and repeated transmission of computer files over the Internet," and thus, specific personal jurisdiction is proper. *Id*.

SunPorno provides for premium membership paid for in U.S. Dollars, with the billing recurring automatically on the subscriber's credit card. Members have access to videos not available to the general public. The website encourages members to set up their own profiles, become involved with other users, and interact with the host computer to do so. Users have 24 hour access to its content. SunPorno also provides for ongoing interaction with the host computer by permitting uploads to the host computer, and downloads of premium videos from the host computer. Plaintiff even purchased a membership itself Exhibit ssss Sunporno Join Sequence from Fraserside Content.

Another case that demonstrates this Court has jurisdiction over Defendants is *CYBERsitter, LLC v. People's Republic of China*, 2011 WL 3322552 (C.D. Cal. 2011). There, the Court used the purposeful availment test handed down by the U.S. Supreme Court. The Plaintiff, a developer of Internet parental control software, alleged that Chinese companies had targeted Plaintiff by obtaining its code for the software and distributing Plaintiff's copyrighted work without authorization. As to jurisdiction, Plaintiff alleged that the companies knew that Plaintiff was a U.S. company and that the defendants' acts would cause injury in the U.S. and in California, the forum state. Plaintiff also claimed that the defendants made the infringing software program available for download to individuals in the United States and had made Plaintiff's code for the software publicly available on its servers. The Plaintiff alleged that a third

defendant, who engaged in other activity in California, distributed computers with Plaintiff's software code in China.

The California court used a three-part test taken from U.S. Supreme Court authority to determine whether a district court can exercise specific personal jurisdiction over a nonresident defendant. First, the defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum. Second, the claim must be one which arises out of or relates to the defendant's forum-related activities. Third, the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable. *CYBERsitter*, 2011 WL 3322552, 6.[1]

The Ninth Circuit evaluated the first test, whether there has been purposeful availment of the privilege of doing business in the forum, using the "Calder-effects" test, taken from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). *Id*. The test requires that defendant allegedly must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id*.

The California district court found that the intentional act requirement was easily met as to all defendants. Courts "construe 'intent' in the context of the 'intentional act' test as referring

---

[1] The U.S. Supreme Court has said that the due process requirement that individuals have fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign is satisfied if the defendant has "purposefully directed" his activities at residents of the forum, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984), and the litigation results from alleged injuries that "arise out of or relate to" those activities, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 1984). *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73, 105 S. Ct. 2174, 2182, 85 L. Ed. 2d 528 (1985). Under such circumstances, the Court held, it is reasonable to exercise jurisdiction over a defendant. *Id*.

to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *CYBERsitter*, at 6. Any one of the alleged acts of theft, misappropriation, and subsequent distribution of Plaintiff's code were all actual, physical acts, even if done by computer.

Here, too, Plaintiff's allegations show that Defendants have knowingly offered Plaintiff's copyrighted videos on Defendants' website, and made them available for download throughout the United States. Defendant clearly targets U.S. users. The website is in English. Its premium membership is offered in dollars. Almost eighteen percent of its 2,500,000 daily visitors are U.S. residents. This means 450,000 U.S. visitors go to Defendants' website daily. Further, the Terms of Service page shows that SunPorno.com invokes the protection of the copyright and other intellectual property laws of the United States for its own works and for the website.

Next, the CYBERsitter court looked at whether the activities of the defendants were expressly aimed at the forum state. The requirement of express aiming requires more than "'untargeted negligence' that merely happens to cause Plaintiff harm." CYBERsitter at 8. The court cited the Ninth Circuit's previous decision in Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc., 106 F.3d 284 (9th Cir.1997), rev'd on other grounds, 523 U.S. 340, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998), and noted that "an allegation of a defendant's willful copyright infringement against a plaintiff with knowledge of plaintiff's principal place of business satisfies the Calder effects test." CYBERsitter, citing Columbia Pictures at 289.

In CYBERsitter, the defendants argued that it never distributed or marketed the allegedly infringing items in California, and that express aiming could not be found from the mere fact that defendants did nothing above and beyond willfully infringing Plaintiff's copyright with the knowledge that Plaintiff resided in California. The court disagreed, pointing to the Ninth

23

Circuit's decision in Columbia Pictures that an allegation of willful copyright infringement knowingly directed at a forum resident "alone" is sufficient to satisfy purposeful availment. CYBERsitter at 10, citing Columbia Pictures, 106 F.3d at 289.[2] "When Defendants commit intentional copyright infringement with knowledge of plaintiff's residency, … they 'should reasonably anticipate being haled into court' in the forum in which Plaintiff resides, as the brunt of the injury takes place there." Id.

Here, too, the infringement of Plaintiff's videos was expressly aimed at harming Plaintiff in its business. Defendants knew that Plaintiff resided in Iowa. It further alleges that Plaintiff sells to Iowa residents the very videos Defendants are infringing by their unauthorized distribution. The quality of Plaintiff's videos and the trademarked and copyrighted names and symbols are further evidence that Defendants specifically intended to target Plaintiff, and the goodwill of Plaintiff's marks, when they placed Plaintiff's videos on their website. This infringement hurts Plaintiff both as a resident of Iowa and as a company selling to customers in Iowa, who may discontinue buying from Plaintiff and become members of Defendants' website instead.

Defendants, however, contend that the copyrights and trademarks were not registered to Plaintiff at the time of the infringement. This is a challenge to Plaintiff's ownership of the copyrights and trademarks, and to its standing to bring the action, and is thus brought under Rule 12(b)(6). Thus, the Court should convert this motion to one for summary judgment and permit discovery before the response is due.

---

[2] In Columbia Pictures, the Ninth Circuit relied on Calder for this holding, noting that Calder held that an intentional tort knowingly directed at a forum resident satisfies the minimum contacts test.

Defendants conspired to and did distribute and make Plaintiff's videos available to residents in the United States and Iowa, knowing that Plaintiff resides in Iowa. This is express aiming, and this court should so find.

The last element in the Ninth Circuit's purposeful availment test is the harm likely to be suffered in the forum state. To satisfy this element, "the 'brunt' of the harm need not be suffered in the forum state," but only "a jurisdictionally sufficient amount of harm." *CYBERsitter*, at 10. Further, Plaintiff satisfies this element if it alleges that defendant's intentional act has 'foreseeable effects' in the forum. *Id*. The *CYBERsitter* court quoted *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010): "In this case, it was foreseeable that [plaintiff] would be harmed by infringement of its copyright, including harm to its business reputation and goodwill, and decreased business and profits. It was also foreseeable that some of this harm would occur in the Forum, where [plaintiff] was known to reside." *Id*. The court held that plaintiff had met the third and last prong of the test, as it alleged that the misappropriation of Plaintiff's copyrighted material would cause harm to Plaintiff in California, and that all of the defendants knew Plaintiff was an American company and that their actions would cause injury to Plaintiff in California. The court thus denied the Motion to Dismiss.

This Court should do the same. It was imminently foreseeable to Defendants that Plaintiff would be injured by the unrecompensed offering of Plaintiff's videos on Defendants' website. Defendant knew that Plaintiff would lose profits by its acts, that Plaintiff was an American business and that it was located in Iowa. Thus, this Court should also find that Plaintiff has made a prima facie case showing that it has specific personal jurisdiction over the Defendant.

Other courts outside of the Ninth Circuit have similarly found that purposeful availment arises from offering products by Internet. In *Jagex Ltd. v. Impulse Software*, 750 F. Supp. 2d

228, 233 (D. Mass. 2010) found that an interactive website that permitted Massachusetts users to exchange payment information for software codes ("Bots") to use in a game was sufficient to exercise jurisdiction. Even though "defendants do not specifically seek out Massachusetts customers, they do not bar them or discourage them from purchasing Bots." The court also found it significant that defendants' websites were not "passive" in nature and that Massachusetts residents use the websites to sign electronic agreements with the defendants and to purchase and use their products. Accordingly, the Court found that defendants had purposefully availed themselves of the privileges of conducting business in Massachusetts.

One district court in the Eighth Circuit has likewise found jurisdiction in the state where Plaintiff resides when infringing products are available on the Internet. In *Furminator, Inc. v. Wahba*, 2011 WL 3847390 (E.D. Mo. 2011), the court noted that even in the Eighth Circuit, when the cause of action involves a tortious act, a plaintiff may obtain specific jurisdiction over a nonresident defendant using the *Calder* effects test. As the court noted "[i]n applying the effects test, the economic injury in trademark infringement cases occurs in the state where the trademark owner has its principal place of business." *Id*. The court did not find that general jurisdiction existed, but that it could exercise specific jurisdiction. The Plaintiff, FURminator, made a prima facie showing that Wahba and Koch knew that the products in question that they sold on eBay.com or Amazon.com were available to Missouri residents, were in fact sold to at least one Missouri resident (Plaintiff), and more-importantly, were counterfeit, infringing on a Missouri company's trademark.

The cases cited by the District Court in Missouri seem to show a more modern trend toward asserting jurisdiction where the infringement affects a resident of the state. The Court cited *3M Co. v. Mohan*, 2010 WL 786519, 1–3 (D.Minn. 2010) as holding that the court had

26

specific personal jurisdiction over a nonresident defendant that used eBay.com and Amazon.com to sell products which allegedly infringed trademarks and patent held by the resident plaintiff; *Bose Corp. v. Neher*, 2010 WL 3814886 (D.Mass. 2010) as holding that the court had specific personal jurisdiction in an infringement case over defendants who allegedly violated a forum company's trademark by posting infringing products on eBay.com, <u>even absent proof of specific sales to forum residents</u>; and *Zen Design Group, Ltd. v. Clint*, 2009 WL 4050247, 3 (E.D.Mich. 2009) where the court ruled that the accused patent infringer's offering of a product for sale on an eBay internet auction to residents of the forum created personal jurisdiction for the infringement claim.

The *Furminator* court also cited the Eighth Circuit Court of Appeals' decision in *Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1391 (8th Cir. 1991) to support its findings. The case, though not involving Internet activity, demonstrates that the Eighth Circuit would likely follow the reasoning in *CYBERsitter* and find specific personal jurisdiction in this case.

The cases Defendants cite are easily distinguishable. In *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co. KG*, 2010 WL 2402834 (E.D. Mo. 2010) aff'd sub nom, 646 F.3d 589 (8th Cir. 2011), the court addressed whether the defendant was subject to the general jurisdiction of Missouri courts based on its website, the network of distributors of its products in Missouri, and the activities of EPI, its North American affiliate, which was registered to do business in Missouri and does conduct business in the state. Here, Plaintiff asserts that the Court has **specific** personal jurisdiction over Defendants based on their own activities, not the activities of others.

In *P.S. Products, Inc. v. Alibaba.com Inc.*, 2011 WL 861164 (E.D. Ark. 2011), the court actually took evidence at a hearing, thus distinguishing the circumstances of making the

decision. Further, the court noted that the website in question "provides information to users but does not sell the product listed." Likewise, in *David White Instruments, LLC v. TLZ, Inc.*, 2003 WL 21148224 (N.D.Ill.2003), the court also found that visitors of the website could not purchase products from the website, but had to go to another website to make the purchase.

Here, the evidence Plaintiff has provided, coming directly from Defendants' website, shows that it does sell the premium membership. The Court must resolve the factual dispute in favor of Plaintiff if the Court acts without conducting a hearing. Thus, the facts are that Defendants do sell memberships on their website.

Defendants fail to cite *Dakota Industries, Inc. v. Dakota Sportswear, Inc.*. There, the Plaintiff, Dakota Industries, a company located in South Dakota, claimed trademark infringement by Dakota Sportswear. Sportswear had no offices, outlets, agents or employees in the forum state (South Dakota), and had never marketed or advertised in South Dakota, and never directly or indirectly shipped products into South Dakota. The evidence showed, however, that the end purchasers of Sportswear's clothing were located throughout the entire United States. Further, major chains carried Sportswear clothing, and thus, if the chains to which Sportswear sold had outlets in the forum state (South Dakota), Sportswear's clothes <u>could</u> be shipped there.

The Court cited *Calder* for the proposition that the defendant's lack of control over distribution of the product in the forum state would not bar jurisdiction when the plaintiff has alleged an intentional tort. *Id.*, citing *Calder* at 789-90, 104 S.Ct. at 1487. The evidence showed that there was some "passing off" (where the deceived customer buys the defendant's product believing it is the plaintiff's) of Sportswear's infringing clothing in South Dakota. This fact, along with the fact that Industries' principal place of business was in South Dakota, demonstrated that "Sportswear's actions were uniquely aimed at the forum state and that the 'brunt' of the

injury would be felt there, as required by *Calder*. The court noted that in the Calder case the allegedly wrongful act of running a defamatory article on a movie star was more directly aimed at the plaintiff and her work in the forum state than in Dakota Sportswear. It noted that the defendant the National Enquirer had its biggest circulation in California and thus a stronger sales presence in the forum state than Dakota Sportswear did. However, the court found that the distinctions did not prevent the applicability of Calder to the facts of the case. *Dakota Indus., Inc.*, 946 F.2d at 1391. The court found that under the circumstances enumerated there, Sportswear 'must reasonably anticipate being haled into court' in South Dakota." *Id*. The Court therefore held that Plaintiff had made a prima facie showing of personal jurisdiction, reversed the dismissal and remanded for further proceedings.

In *Dakota*, the Eighth Circuit also made special note of two Ninth Circuit Court of Appeals cases that held that jurisdiction may be proper when defendant's only contact with the forum state is the "purposeful direction" of a foreign act having effect in that state: *Brainerd v. Governors of Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir.1989); *Haisten v. Grass Valley Medical Reimbursement*, 784 F.2d 1392, 1397 (9th Cir.1986). It is safe to presume that the court would have followed the analysis in *CYBERsitter* and came to the same conclusion: that exercising personal jurisdiction is proper.

The facts of this case are comparable to those in *Dakota*. Here, as in the Internet cases, Defendant maintains interactive websites where users in the U.S. pay a fee for Defendant to distribute Plaintiff's videos to them, causing injury to Plaintiff, an Iowa corporation. Further, Defendant is ready to accept the business of Iowa residents, offering Iowa residents the opportunity to become paying members and so view upgraded videos and download premium versions of Plaintiff's films, many involving the pirated videos copyrighted and owned by

29

Plaintiff. Plaintiff has Iowa residents, and Defendants are competing for these customers with their website. By these activities, Defendant has purposefully directed its activities at Iowa residents (including Plaintiff) and purposefully availed itself of the privilege of doing business in Iowa as required for specific jurisdiction.

For the court to exercise specific jurisdiction, it must also find that the plaintiff's action arises out of or relates to the defendant's forum-related activities. *Lakin, supra*. Here, the activities of defendant – allowing Iowa residents to view the Plaintiff's pirated videos – is exactly what Plaintiff sues for in this action. Consequently, the elements of specific personal jurisdiction are met in this case, and the Court may exercise jurisdiction over Defendant. The court should therefore deny the Motion to Dismiss.

      **D.**      **The Court should not Dismiss for Forum Non Conveniens**

Defendants also include a one paragraph request for dismissal based on the ground of forum non-conveniens. The U.S. Supreme Court in *Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 508-509, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) held that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."'  The factors to be considered in deciding a motion to dismiss for forum non conveniens fall into two categories. Among the factors of "private interest" listed by the Court were accessibility of proof and witnesses, enforceability of any resulting judgment, and the ease and expense of litigation in the forum, which allow the court to "weigh relative advantages and obstacles to fair trial". *Id*. The court also held that "public interest" factors must considered – factors such as the burden created for congested local court calendars and local juries by trials having no connection with the forum.  Conversely, where the controversy affects those in the community "there is reason for

30

Case 3:11-cv-03041-MWB-LTS   Document 29-1   Filed 02/28/12   Page 30 of 41

holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only." *Id.*

Last, the court noted that "[t]here is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Id.*

Following these factors, courts addressing claims of infringement of U.S. trademarks and copyrights have found that they should retain jurisdiction rather than dismiss for forum non conveniens. In *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1336-37 (9th Cir. 1984), the Court reversed the district court, saying it failed to weigh Arizona's interests in having the controversy resolved in its jurisdiction and in interpreting its own laws. Because U.S. law was applicable to the trademark infringement claims, the Arizona District Court had the more substantial interest in the litigation. *See also*, *American Rice, Inc. v. Arkansas Rice Growers Co-op. Ass'n*, 701 F.2d 408, 417 (5th Cir. 1983), refusing to "relegate an American plaintiff to a foreign court when American [trademark and unfair competition] law, rather than foreign law, is applicable," and injunctive relief is sought.

Here, the same is true. Iowa, and the United States, has an interest in resolving a controversy involving its corporate citizens. Further, Plaintiff here has invoked the trademark and copyright laws of the United States for infringement occurring in the United States as well as abroad. This country's courts should hear the case and decide the legal issues.

Defendants also assert that the litigation should take place in Africa or Europe. They provide no names of witnesses, and no affidavit to support the statements. "The burden is on the defendant to provide these facts <u>by way of affidavit or other information</u>." *Reid–Walen v.*

31

*Hansen*, 933 F.2d 1390, 1396 (8th Cir.1991). Conclusory allegations or statements are not enough. *Id*. The reason for this is that, in deciding whether to dismiss, the Court "must examine the materiality and importance of the anticipated witnesses' testimony." Only then can the Court determine the witnesses' accessibility and convenience to the forum. *Id*., citing *Gates Learjet Corp. v. Jensen*, *supra*.

The factors supporting this Court's taking jurisdiction, rather than relegating Plaintiff to a foreign forum are substantial. The balance is not "strongly in favor of the defendant," and Plaintiff's choice of forum should not be disturbed.

## II.    The Court Should Exercise Jurisdiction Under Rule 4(k)(2), F.R.Civ.P.

An alternative giving this court jurisdiction exists in a case such as this, where Defendants have asserted that jurisdiction is only proper in another country. Rule 4(k)(2), F.R.Civ.P. closes the loophole in personal jurisdiction that formerly allowed a non-resident defendant with insufficient "minimum contacts" in any individual state but sufficient contacts with the United States as a whole, to escape jurisdiction in all fifty states. *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1414 (Fed. Cir. 2009).

Rule 4(k)(2), commonly known as the federal long-arm statute,  states that as to claims arising under federal law, "serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and(B) exercising jurisdiction is consistent with the United States Constitution and laws." The Rule, in essence, applies to "foreign defendants lacking sufficient contacts with any single state [who] could ... avoid responsibility for civil violations of our federal laws." *Getz v. Boeing*, 654 F.3d 852, 858 (9th Cir.2011). It was adopted to ensure that federal claims will have a U.S. forum if sufficient national contacts exist. *See Synthes (U.S.A.) v.*

32

*G.M. Dos Reis Jr. Ind. Com. de Equip. Medico*, 563 F.3d 1285, 1297 (Fed.Cir.2009), citing

Fed.R.Civ.P. 4(k)(2) advisory committee notes to 1993 amendment.

      As to the first requirement, that the case is brought under federal law, Plaintiff's claims

under the Lanham act and trademark and copyright infringement statutes are clearly federal law

claims. As to the second requirement, that defendant is not subject to jurisdiction in any single

state, the D.C., Federal, Fifth, Seventh, Ninth and Eleventh Circuits have adopted an approach

that places the burden of proof of this element on the defendant. *See Oldfield v. Pueblo De Bahia*

*Lora*, S.A., 558 F.3d 1210, 1219 n. 22 (11th Cir.2009); *Touchcom, Inc. v. Bereskin & Par*r, 574

F.3d 1403, 1415 (Fed. Cir. 2009); *Adams v. Unione Mediterranea DI Sicurta*, 364 F.3d 646, 651

(5th Cir. 2004); *Mwani v. bin Laden*, 417 F.3d 1, 11 (D.C. Cir. 2005); *ISI Int'l, Inc. v. Borden*

*Ladner Gervais LLP*, 256 F.3d 548, 551-52 (7th Cir.2001); *Holland Am. Line Inc. v. Wartsila N.*

*Am., Inc.*, 485 F.3d 450, 461 (9th Cir.2007); Under that approach, a court is entitled to use Rule

4(k)(2) to determine whether it possesses personal jurisdiction over the defendant unless the

defendant names a state in which the suit can proceed. As the Seventh Circuit noted, "A

defendant who wants to preclude the use of Rule 4(k)(2) has only to name some other state in

which the suit could proceed. Naming a more appropriate state would amount to a consent to

personal jurisdiction there.... If, however, the defendant contends that he cannot be sued in the

forum state and refuses to identify any other state where suit is possible, then the federal court is

entitled to use Rule 4(k)(2)." *ISI Int'l*, 256 F.3d at 552 (citations omitted).

      As the Federal Circuit noted in *Touchcom* the purposes of Rule 4(k)(2) – to prevent

defendants with nationwide minimum contacts from avoiding jurisdiction here – are best

achieved when the defendant is afforded the opportunity to avoid the application of the rule only

when it designates a suitable forum in which the plaintiff could have brought suit. The courts

should not require a plaintiff to aver that there is no state in which defendant is subject to jurisdiction, as it negates the ability to plead that there is jurisdiction in the state where the action was brought. "An approach that forecloses alternative arguments appears to conflict with the Federal Rules of Civil Procedure. See Fed.R.Civ.P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single court or defense or in separate ones")." *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d at 1415.

If Defendants will not name a state where they concede they are subject to jurisdiction, then the Court may analyze whether exercising jurisdiction in the United States comports with due process. Here, it does.

Looking at the entire United States, it is clear that SunPorno.com does business with United States residents, targets its products at United States residents and has knowingly and intentionally infringed on the trademarks and copyrights of United States companies. The quantity of contacts is substantial – almost eighteen percent of its 2,500,000 visitors – 450,000 – are United States residents. The website, in English, provides its membership fees in U.S. Dollars.

These facts clearly show that the factors the Eighth Circuit requires courts to examine to determine jurisdiction are met:

(1) The nature and quality of the contacts with the forum state – clearly Defendants have ongoing contractual relationships with United States residents through premium membership and through targeted advertising on the website.

(2) The quantity of the contacts – Eighteen percent of its visitors are U.S. residents. It is believed that a far higher percentage are fee paying members of the site.

(3) The relationship of the cause of action to the contacts – The cause of action for trademark and copyright infringement is dependent on the fact that Defendants contacts with the U.S. are for the purpose of displaying Plaintiff's infringed films.

(4) The interest of the United States in providing a forum for its residents – the very existence of Rule 4(k)(2) shows that the U.S. wants to assure that a foreign defendant cannot engage in business in the U.S. yet escape suit here.

And (5) The convenience or inconvenience to the parties – again, since they do business in the U.S. with U.S. citizens, defendants can hardly claim inconvenience. *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010).

The Court is to look at all of the factors in the aggregate and examine the totality of the circumstances in making a personal-jurisdiction determination. *Id.* Here, there is no question that these Defendants are doing business in an ongoing, systematic way, taking U.S. dollars from U.S. residents while infringing on a U.S. company's trademarks and copyrights that are protected by U.S. law. In fact, Defendants themselves invoke the U.S. intellectual property laws to protect their website and the intellectual property they claim. For the Court to refuse to exercise jurisdiction would violate the purpose of Rule 4(k)(2).

The Court should exercise jurisdiction in this case unless Defendants designate another state it concedes has jurisdiction over them.

## III.    The Court Should Permit Jurisdictional Discovery by Plaintiff

Should the Court for some reason not exercise jurisdiction, it should permit jurisdictional discovery. The type of information that would demonstrate Defendants' contacts with Iowa (or the United States as a whole) – such as the number of times residents have accessed the websites, the number of residents that have signed on for premium services, and any other data showing

35

interaction between Defendant's website and Iowa or United States residents – are clearly not available to Plaintiff except through discovery. When this is the case, the Court should permit limited jurisdictional discovery.

In *Principal Fin. Services, Inc. v. Big Fin. & Ins. Services, Inc.*, 426 F. Supp. 2d 976, 982 (S.D. Iowa 2006), the Court noted that Principal Financial Services could only obtain information about the quality or quantity of contacts that the website has facilitated in Iowa through discovery. The Court found that "discovery will facilitate [the court's] analysis of the five factors for determining whether personal jurisdiction is appropriate, as well as the applicability of the Zippo test." Thus the court permitted discovery regarding Defendants' website as well as other areas that were likely to aid the court to resolve the issue of personal jurisdiction question.

Similarly, in *Fishel v. BASF Group*, 175 F.R.D. 525, 528 (S.D. Iowa 1997), the court noted that where it is not readily determinable whether discovery would disclose additional facts supporting jurisdiction, "it may be an abuse of discretion to deny a plaintiff an opportunity for discovery to establish his jurisdictional allegations. See *Radaszewski v. Contrux, Inc.*, 891 F.2d 672, 674–75 (8th Cir.1989) (Radaszewski I) (personal jurisdiction case; district court dismissal reversed with directions to allow discovery on jurisdictional allegations); *Majd–Pour v. Georgiana Community Hosp., Inc.*, 724 F.2d 901, 903 (11th Cir.1984) (a subject matter jurisdiction case)."

If the record does show that asserting jurisdiction would be reasonable and would not offend notions of fair play and substantial justice (that is, it would comport with due process), then Plaintiff should be permitted the limited jurisdictional discovery it seeks. *Lakin*, 348 F.3d at 712-714. Here, there is evidence that would tend to show that Defendants do have contacts with

Iowa, in addition to the fact it is infringing on an Iowa company's copyrights and trademarks and stealing its Iowa customers. The attachments to the Complaint show that U.S. customers make up almost 18 percent of the Defendant's world-wide market. Since the U.S. population is only 4.5% of the world population, this means that the "company's contacts are substantial" for the U.S. forum. As in *Principal Fin. Services, Inc. v. Big Fin. & Ins. Services, Inc.*, there is no publicly available evidence of the extent of Defendants' contacts specifically with Iowa (or, other than the statistics already provided, the United States) and how many Iowa residents are paying members of Defendants' website. This information is simply not available to Plaintiff without discovery.[3]

*Lakin* held that the interest of the state in providing a forum was an element of finding due process. 348 F.3d at 713. Here, Plaintiff is a legitimate Iowa corporation, active in the Northwood, Iowa community, whose trademarks are being infringed by Defendant. Thus, Iowa has a significant interest in providing a forum for redress of Plaintiff's rights. Further, Defendants have not provided a clue as to where in the United States it might be fair to sue them. Because nearly 18% of the website's business is from the U.S., it is fair to sue Defendants somewhere in the United States. Because there are certain to be residents in Iowa who do business with Defendant's websites, and because Plaintiff, the corporation suffering the injury because of Defendant's websites, is located here, exercising personal jurisdiction in Iowa does comport with due process.

---

[3] The Court should consider this question: Where would Plaintiff obtain information about who is subscribing to SunPorno, or who has switched from Plaintiff's sites or dvd orders to SunPorno? This isn't information Plaintiff is likely to obtain by going door to door asking residents, or even running an ad asking people to call in and disclose their porn viewing habits. This simply isn't the type of information people are generally going to disclose.

37

The *Lakin* court also considered the burden on the defendant to travel here. *Lakin*, 348 F.3d at 713. Again, however, Defendants have substantial business in the United States because of their sale of premium memberships to U.S. residents. Thus their assertion that they may not be sued here does not show "fair play and substantial justice." Because the Defendants have contacts with Iowa, the burden is not overly heavy on Defendants and due process permits them to be called to defend the clams here.

Because the evidence on the record thus far shows it would be reasonable and would not offend notions of fair play and substantial justice, the Court "must" allow jurisdictional discovery to permit Plaintiff to discover information regarding Defendants' contacts with Iowa residents if the Court determines that the current record does not establish personal jurisdiction over Defendants.

## CONCLUSION

Piracy of copyrighted works is not new to the entertainment field. Music, movies, videos and books have been copied and distributed without authorization or compensation to the rightful owner for as long as creative people have memorialized their ideas on paper. In the past, copies were easier to spot and distribution of unauthorized works more difficult. With the advent of the Internet reaching around the globe and the ability to replicate digital files infinitum, the ease of pirating copyrighted material has contributed to the explosion of unauthorized material. The global reach of the Internet allows website operators to hide behind borders, fictional names or outdated addresses, thwarting attempts to seek compensation for the unauthorized use of copyrighted content. Traditional geographic borders have no meaning on the Internet, further compounding the difficulty facing legitimate copyright owners attempting to enforce their rights against unauthorized users. Legitimate copyright owners face a steep hill to enforce their rights when their works can be replicated at lightning speed by far away entities, only to be sold back

38

to the legitimate owner's customers in its home market and the pirates claim immunity from prosecution.

Plaintiff, a legitimate Iowa company with full ownership of United States copyrights and trademarks, purchased a membership at SunPorno.com from a page containing a video that infringed upon Plaintiff's copyright. Plaintiff documented numerous infringements from its Northwood, Iowa office. The SunPorno.com website contains advertising directly targeted at Iowa residents and interacts directly with Iowa residents, competing with Plaintiff for customers using Plaintiff's own property. Ownership of the SunPorno.com website is outside the United States, and Defendants claim insufficient contacts to be haled into court.

Boiled down to its essence, Defendants' argument is that claims for infringement of U.S. trademarks and copyrights, rightfully owned by a duly registered Iowa Limited Liability Company with a real office in Northwood, Iowa, and infringed upon to produce income from Internet users and advertisers in the U.S., may not be litigated in the United States. This argument is baseless. Defendants, by their actions targeting Iowa internet users and United States advertisers, infringing the copyrights and trademarks of an Iowa company, are properly and fairly under the jurisdiction of this Court. The due process requirements for Defendants to be haled into this court have been met.

DATED: February 26, 2012                    Respectfully submitted,

                                             By:

                                                  /s/ Chad L. Belville
                                                  Chad Belville, Attorney at Law
                                                  Attorney for Plaintiff

Iowa Bar # 015731

Physical Address                     4742 North 24th Street Suite 315
                                     Phoenix, AZ 85016

MAILING ADDRESS:                     P.O. Box 17879
                                     Phoenix, AZ 85011

                                     Telephone:  602-904-5485
                                     FAX:  602-297-6953
                                     E-mail cbelville@azbar.org
                                     ATTORNEY FOR PLAINTIFF


                        Certificate of Service


I, Chad Belville, Attorney for Plaintiff, hereby certify that on February 26, 2011 a copy of this Resistance to Defendant's Motion to Dismiss was served upon the Attorneys for Defendants, listed as Connie M. Alt, Jennifer Rinden, Valentin Gurvits, and Evan Fray-Witzer, through the Court's Electronic Case Filing System.


                        /s/ Chad L. Belville

EXHIBIT LIST

A.  IP Trace Location

B.  About SunPorno Servers

C.  Server Location

D.  Declaration of Jason Tucker

E.  WhoIs SunPorno August 31, 2011

F.  Emails Between Defendant Sergej Letyagin and Jason Tucker

G.  Join Sequence on SunPorno

H.  TGP Alliance Homepage

I.  TGP Alliance Network of Sites

J.  TGP Alliance acknowledged by SunPorno

K.  Skype Chat Log between Sergej Letyagin and Jason Tucker

L.  Sergej Account for TGP Alliance

M.  SunPorno Terms of Service

N.  Screen Grabs Showing Targeted Advertising

O.  Targeted Advertising Hanlontown

P.  SunPorno Frequently Asked Questions

Q.  Sunporno DMCA Notice 2012

R.  SunPorno 18 U.S.C. 2257 Notice