## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

FRASERSIDE IP L.L.C., an Iowa
Limited Liability Company,

           Plaintiff,

vs.

SERGEJ LETYAGIN, d/b/a
SunPorno.com and www.SunPorno.com
and JOHN DOES 1-100 AND JOHN
DOE COMPANIES 1-100,

           Defendants.

No. C11-3041-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANTS' MOTION TO
DISMISS**

—————————

## TABLE OF CONTENTS

I.  INTRODUCTION AND BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . 3
   A.  Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   B.  Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
      1.    Facts Drawn From Complaint . . . . . . . . . . . . . . . . . . . . . . 4
      2.    Facts Related Solely To Personal Jurisdiction . . . . . . . . . . . 5

II.  LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   A.  Rule 12(b)(2) Standards and Personal Jurisdiction . . . . . . . . . . . . . . 7
   B.  Personal Jurisdiction Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . 12
   C.  Federal Long-Arm Statute . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
      1.    Claim arises under federal law . . . . . . . . . . . . . . . . . . . . 20
      2.    No state with personal jurisdiction over defendants . . . . . . . 21
      3.    Due process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

III.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Nearly 75 years ago, H.G. Wells came close to predicting the advent of the Internet in his collection of essays, *World Brain*:

> There is no practical obstacle whatever now to the creation of an efficient index to all human knowledge, ideas and achievements, to the creation, that is, of a complete planetary memory for all mankind. And not simply an index; the direct reproduction of the thing itself can be summoned to any properly prepared spot. A microfilm, coloured where necessary, occupying an inch or so of space and weighing little more than a letter, can be duplicated from the records and sent anywhere, and thrown enlarged upon the screen so that the student may study it in every detail.

H.G. WELLS, WORLD BRAIN 60 (Doubleday, Doran & Co. 1938).  Wells, however, did not foresee the legal challenges that the advent of the internet would present for courts considering personal jurisdiction and venue.  Such a challenge is before me.  Plaintiff, a producer of adult motion pictures, alleges that defendants, an individual residing in Gibraltar and a corporation headquartered in the Republic of Seychelles, have willfully violated plaintiff's copyright and trademarks by offering plaintiff's motion pictures on an internet website they operate.  However, the merits of plaintiff's claims are not presently before me.  Rather, I must resolve, *inter alia*, whether plaintiff has made a *prima facie* showing that defendants have sufficient minimum contacts with Iowa, or, alternatively, the United States, to satisfy due process and permit the exercise of personal jurisdiction over them.

# I.  INTRODUCTION AND BACKGROUND

## A.  Procedural Background

On August 17, 2011, plaintiff Fraserside IP L.L.C. ("Fraserside") filed a complaint against Sergej Letyagin, doing business as SunPorno.com ("SunPorno"),  John Does, and John Doe Companies, alleging the following causes of action:  copyright infringement, in violation of 17 U.S.C. §§ 106 and 501 *et seq.*; contributory copyright infringement, in violation of 17 U.S.C. §§ 106 and 501 *et seq.*; vicarious copyright infringement, in violation of 17 U.S.C. §§ 106 and 501 *et seq.*; inducing copyright infringement, in violation of 17 U.S.C. §§ 106 and 501 *et seq.*; false designation of origin, in violation of 15 U.S.C. § 1125(a); and, dilution of trademark, in violation of 15 U.S.C. § 1125(c).

On February 7, 2012, Letyagin and SunPorno filed a Motion to Dismiss.  In their motion, Letyagin and SunPorno contend that they are not subject to personal jurisdiction in Iowa and the Complaint must be dismissed pursuant to Federal Rule of Civil procedure 12(b)(2).  On February 27, 2012, Fraserside filed a resistance to Letyagin and SunPorno's Motion to Dismiss.  Fraserside argues that SunPorno's internet activities establish a sufficient basis for specific personal jurisdiction under Iowa's long-arm statute.  Fraserside, alternatively, argues that, even if it did not make a *prima facie* showing of personal jurisdiction under Iowa's long-arm statute, personal jurisdiction exists under the federal long-arm statute found in Federal Rule of Civil Procedure 4(k)(2).  Fraserside also alternatively requests that I delay ruling on defendants' motion and permit it limited jurisdictional discovery.   After obtaining an extension of time, Letyagin and SunPorno filed their reply brief on March 16, 2012.

### B. Factual Background

#### 1.    Facts Drawn From Complaint

On a motion to dismiss, I must assume all facts alleged in the Complaint are true, and must liberally construe those allegations. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).   The following factual background is drawn from the Complaint, documents attached to the Complaint, and public records.[1]

Plaintiff Fraserside is a subsidiary of Private Media Group, Inc., a Nevada Corporation ("Private Media").   Private Media, Fraserside, and sibling companies, collectively, are commercially known as "Private."   Private Media is a producer of adult motion pictures.   Its adult films are distributed on a wide range of platforms, including mobile handsets in 45 countries, digital television in 24 countries, broadband internet, a

---

[1] I note that I may consider public records, those materials that are embraced by the complaint, and documents attached to the complaint. *See Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) ("In addressing a motion to dismiss,'[t]he court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record.'") (quoting *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010); *Noble Sys. Corp. v. Alorica Cent., L.L.C.*, 543 F.3d 978, 983 (8th Cir. 2008) ("the district court is limited to the materials properly before it on a motion to dismiss, which may include public records and materials embraced by the complaint."); *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (noting that a court "generally must ignore materials outside the pleadings, but it may consider 'some materials that are part of the public record or do not contradict the complaint,' as well as materials that are "'necessarily embraced by the pleadings.'")(citations omitted). Materials necessarily embraced by the complaint include "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Kushner v. Beverly Enters.*, 317 F.3d 820, 831 (8th Cir. 2003)); *see Jenisio v. Ozark Airlines, Inc., Ret. Plan,* 187 F.3d 970, 972 n.3 (8th Cir. 1999) ("A district court may consider documents on a motion to dismiss where . . . the plaintiffs' claims are based solely on the interpretation of the documents and the parties do not dispute the actual contents of the documents.").

South American cable channel, DVDs, and on demand and subscription based services on the Internet.   Private has produced over 1,000 adult films and holds over 75 United States copyrights for its works.

Defendant Sergej Letyagin is the owner of defendant SunPorno.  He resides in Gibraltar.   SunPorno competes with Fraserside Holdings in the distribution and sale of adult audio-visual works through the Internet. SunPorno operates the website www.SunPorno.com.   The website allows users the option of viewing adult films, downloading adult films, or viewing films in Hi-Definition.[2]   One of Fraserside's copyrighted works has been viewed over 55,000 times on SunPorno's website.

### 2.    *Facts Related Solely To Personal Jurisdiction*

Defendants have supplied affidavits in support of their request to dismiss the Complaint on the ground of lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). I have extracted the following facts, all uncontroverted, from those affidavits which relate to defendants' contacts with the State of Iowa.

Letyagin is a full-time resident of Europe.  He has never resided in, or visited, Iowa.  He has never resided in, or visited, the United States.  He does not maintain any

---

[2]SunPorno's website informs users wishing to watch adult films in Hi-Definition the following:

> If you want to watch movies in Hi-Definition quality, you will need to upgrade your account.  You will need to pay for this account.  Please note that an HD upgrade account is totally separate from SunPorno and services are provided by a third-party.  If you want to cancel your HD Upgrade membership, please use support system at http://www.csmemberers.com.  Please follow this link for more details http://www.sunporno.com/premium.php.

SunPorno webpage at 1; Plaintiff's Ex. P.

servers in Iowa, does not advertise there, does not own any real estate in Iowa, and has never paid taxes in Iowa. He is the Director of Technology for Ideal Consult, Ltd. ("Ideal"). Ideal is headquartered in the Republic of Seychelles. Letyagin alleges that Ideal owns and operates the SunPorno website, and that he has never owned or run that website.[3]

Ideal has no employees in Iowa, and has never maintained a server in Iowa. Ideal has never owned any real state in Iowa and has never paid taxes in Iowa. Ideal has never had a bank account in Iowa. Neither Ideal nor SunPorno are registered to do business in Iowa.

SunPorno does not offer any premium memberships. SunPorno has previously entered into affiliate agreements with other companies that provide adult video memberships to enter into affiliate agreements with them. None of these other companies were located in Iowa. Under these affiliate agreements, the affiliated company created what is known as a "white label site." In a white label site, the affiliated company puts SunPorno's logo on a site which the affiliated company creates, owns, and runs.

Ideal has no control over what ads are displayed on SunPorno.com. Ideal contracts with an advertising network company called ExoClick. ExoClick is headquartered in

---

[3] Fraserside hotly contests Letyagin's assertion that he has no ownership interest in SunPorno. Fraserside points to Skype chats between Letyagin and Jason Tucker, Fraserside's Enforcement Officer, in which Letyagin refers to SunPorno as "a small website like mine". Skype Chat Log at 1, Plaintiff's Ex. K. Fraserside also points out that a WhoIs search, an online database where users can access information regarding domains, identifies Letyagin as SunPorno's registrant. Fraserside also contends that, after this lawsuit was filed, Letyagin transferred his ownership in SunPorno to Ideal, his alter ego. Letyagin, however, has not sought dismissal on the ground that Fraserside has sued the wrong party. For the purposes of defendants' motion, I will assume that Letyagin is, as alleged in the Complaint, the owner of SunPorno and its parent company, Ideal.

Spain.  Ideal provides banner advertising space on its website to ExoClick.  ExoClick then selects the advertisements that display when someone goes to the website.  The SunPorno website also has "pop under" ads which appear in a separate browser window beneath the main browser window.  These advertisements are provided by Ero-Advertising.com, a Netherlands advertising network company.  Ideal permits Ero-Advertising to place ads in the "pop under" spaces on its SunPorno website.  Ero-Advertising then sells advertising to its clients.  The SunPorno website has nothing to do with those transactions or with what ads are displayed.  ExoClick and Ero-Advertising gear their ads to the location of the user.  Visitors in France are shown French ads while visitors in Germany are shown German ads.  The advertisements are not for SunPorno but rather for customers of ExoClick and Ero-Advertising.

## II.  LEGAL ANALYSIS

### A.  Rule 12(b)(2) Standards and Personal Jurisdiction

In considering defendant's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), Fraserside's Complaint "must state sufficient facts . . . to support a reasonable inference that [each defendant] may be subjected to jurisdiction in the forum state." *Steinbuch v. Cutler,* 518 F.3d 580, 585 (8th Cir. 2008). "'Once jurisdiction ha[s] been controverted or denied, [plaintiffs] ha[ve] the burden of proving such facts.'" *Dever v. Hentzen Coatings, Inc.,* 380 F.3d 1070, 1072 (8th Cir. 2004) (quoting *Block Indus. v. DHJ Indus., Inc.,* 495 F.2d 256, 259 (8th Cir. 1974)); *see Viasystems, Inc. v. EBM-Papst St. George GMBH & Co., K.G.*, 646 F.3d 589, 592 (8th Cir. 2011). Fraserside need not, however, establish jurisdiction by a preponderance of the evidence until an evidentiary hearing is held, or until trial. *Dakota*

*Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1387 (8th Cir. 1991).  Where, as here, "'the district court does not hold a hearing and instead relies on pleadings and affidavits, . . . the court must look at the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party.'"  *Pangaea, Inc. v. Flying Burrito L.L.C.,* 647 F.3d 741, 745 (8th Cir. 2011)(quoting *Dakota Indus., Inc.,* 946 F.2d at 1387); *Johnson v. Arden*, 614 F.3d 785, 793-94 (8th Cir. 2010)( "'If the District Court does not hold a hearing and instead relies on pleadings and affidavits, then we must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party.'")(quoting *Epps v. Stewart Information. Serv. Corp.,* 327 F.3d 642, 646–47 (8th Cir. 2003)); *Romak USA, Inc. v. Rich,* 384 F.3d 979, 983-84 (8th Cir. 2004)(noting that a court "must view the evidence in the light most favorable to [plaintiffs] and resolve factual conflicts in its favor.").   For Fraserside to survive defendants' motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, Fraserside "'need only make a prima facie showing of jurisdiction,' and may do so by affidavits, exhibits, or other evidence." *Romak USA, Inc.,* 384 F.3d at 983 (quoting *Epps,* 327 F.3d at 647); *accord K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591 (8th Cir. 2011); *see Viasystems, Inc.,* 646 F.3d at 592; *Pangaea, Inc.,* 647 F.3d at 745.

I "may assume jurisdiction over a foreign defendant only to the extent permitted by the forum state's long-arm statute and by the Due Process Clause of the Constitution." *Dakota Indus., Inc. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir. 1994); *accord K-V Pharm. Co.*, 648 F.3d at 592 ("Personal jurisdiction in a diversity case exists 'only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause.'")(quoting *Dever,* 380 F.3d at 1073 (internal quotation marks omitted)).  Iowa's long-arm statute "expands Iowa's jurisdictional reach to the widest due process parameters

allowed by the United States Constitution."[4]  *Hammond v. Florida Asset Fin. Corp.*, 695 N.W.2d 1, 5 (Iowa 2005) (discussing Iowa Rule of Civil Procedure 1.306).  "As a result, the Court is left with the sole issue of whether exercising personal jurisdiction over [the] nonresident Defendant is consistent with principles of due process."  *Brown v. Kerkhoff*, 504 F. Supp. 2d 464, 499-500 (S.D. Iowa 2007); *see Bell Paper Box, Inc. v. U.S. Kids, Inc.* (*Bell Paper I*), 22 F.3d 816, 818 (8th Cir. 1994) ("[W]hen a state construes its long-arm statute to confer jurisdiction to the fullest extent permitted by the due process clause . . . the inquiry collapses into the single question of whether exercise of personal jurisdiction comports with due process.").

"The Due Process Clause requires 'minimum contacts' between the nonresident defendant and the forum state before the court may exercise jurisdiction over the defendant."  *Coen v. Coen*, 509 F.3d 900, 905 (8th Cir. 2007) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).  The Eighth Circuit Court of Appeals has explained sufficient minimum contacts as follows:

> "Sufficient contacts exist when the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there, and when

---

[4] Iowa's long-arm statute is actually set forth in two places:  Iowa Code § 617.3 and Iowa Rule of Civil Procedure 1.306.  Section 617.3 provides for the service of "foreign corporations or nonresidents contracting or committing torts in Iowa," Iowa Code § 617.3 (2006), and Rule 1.306 provides for an "[a]lternative method of service" that applies to "every corporation, individual, personal representative, partnership or association," Iowa R. Civ. P. 1.306.  Rule 1.306 is the provision that specifically extends Iowa's jurisdictional reach to the federal constitutional limits.  *See Hammond*, 695 N.W.2d at 5; *Larsen v. Scholl*, 296 N.W.2d 785, 788 (Iowa 1980) (noting that Iowa Rule of Civil Procedure 56.2 (now Rule 1.306), "unlike Iowa's older 'long-arm' statute, section 617.3, . . . expands Iowa's jurisdictional reach to the widest due process parameters of the federal constitution").

> maintenance of the suit does not offend traditional notions of fair play and substantial justice." By defendant's reasonable anticipation, we mean "there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." We have set "a five-part test for measuring minimum contacts: (1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." Factors one through three are primary. With respect to the third factor, we distinguish between specific jurisdiction and general jurisdiction. "'Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state,' while '[g]eneral jurisdiction . . . refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose.'"

*Id.* (citations omitted); *see K-V Pharm. Co.*, 648 F.3d at 592; *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 667 F.3d 515, 518 (8th Cir. 2010); *Steinbuch*, 518 F.3d at 585-86; *Johnson v. Woodcock*, 444 F.3d 953, 956 (8th Cir. 2006); *Epps v. Stewart Information. Servis. Corp.*, 327 F.3d 642, 648 (8th Cir. 2003); *Guinness Import Co. v. Mark VII Distributors, Inc.*, 153 F.3d 607, 613 (8th Cir. 1998); *Aylward v. Fleet Bank*, 122 F.3d 616, 618 (8th Cir. 1997); *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996).

The Eighth Circuit Court of Appeals has further instructed that:

> The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party of a third person. Jurisdiction is proper, however, where the contacts proximately result from

> actions by the defendant himself that create a substantial
> connection with the forum State.

*Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 693-94 (8th Cir. 2003) (citations omitted).

"'Minimum contacts must exist either at the time the cause of action arose, the time the suit was filed, or within a reasonable period of time immediately prior to the filing of the lawsuit.'" *Johnson*, 444 F.3d at 955-56 (quoting *Pecoraro v. Sky Ranch For Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003)). If the court determines that a defendant has the requisite "minimum contacts within the forum state, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)); *see Luv N. Care Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006) ("It remains for us to inquire whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. When a plaintiff makes its *prima facie* case that the defendant has 'minimum contacts' with the forum state, the burden of proof shifts to the defendant to show that the exercise of jurisdiction would be unreasonable." (citation and quotation omitted)). These other factors include:

> "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of the controversies," and the "shared interest of the several States in furthering fundamental substantial social policies."

*Burger King Corp.*, 471 U.S. at 476-77 (quoting *World Wide Volkswagen*, 444 U.S. at 292). "These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be

required." *Id.* at 477. If, however, a defendant "seeks to defeat jurisdiction" when the defendant purposefully "directed his activities at forum residents"—i.e., when minimum contacts are clearly established—the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.*

## B.  Personal Jurisdiction Analysis

Fraserside contends that defendants' contacts with Iowa are sufficient to establish specific jurisdiction over them.[5] "In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Brown*, 131 S. Ct. at 2851 (quoting Arthur T. von Mehren & Donald T. Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 HARV. L. REV. 1121, 1136 (1966)). Thus, "[s]pecific jurisdiction is proper 'only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities.'" *Johnson*, 614 F.3d at 795 (quoting *Steinbuch*, 518 F.3d at 586). Fraserside asserts that specific jurisdiction over

---

[5]Fraserside does not contend that defendants' contacts with Iowa are sufficient to establish general jurisdiction over them. "A court obtains general jurisdiction 'against a defendant who has 'continuous and systematic' contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum.'" *Johnson*, 614 F.3d at 794 (quoting *Dever.*, 380 F.3d at 1073)(quoting in turn *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 (1984)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853–54 (2011); *see Viasystems, Inc.*, 646 F.3d at 592 (quoting *Brown*, 131 S. Ct. at 2853-54). Thus, I will confine my analysis to whether specific jurisdiction exists.

defendants exists because they have directed tortious conduct at Iowa through the activities of the SunPorno website.

In *Lakin v. Prudential Sec., Inc.,* 348 F.3d 704, 710 (8th Cir. 2003), the Eighth Circuit Court of Appeals adopted the "sliding scale" approach established by *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119, 1124 (W.D. Pa. 1997), to determine if website contacts provide a basis for *specific* jurisdiction. *Lakin,* 348 F.3d at 710 ("We agree with our sister circuits that the *Zippo* model is an appropriate approach in cases of specific jurisdiction—, *i.e.,* ones in which we need only find 'minimum contacts.'"). The "sliding scale" approach recognizes that "'the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of the commercial activity that the entity conducts over the Internet.'" *Id.* (quoting *Zippo Mfg. Co.,* 952 F. Supp. at 1124). In *Lakin,* the Eighth Circuit Court of Appeals observed that:

> "At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site."

*Id.* at 710–11 (quoting *Zippo Mfg. Co.,* 952 F. Supp. at 1124).

Fraserside relies upon the *Calder* effects test formulated by the United States Supreme Court in *Calder v. Jones,* 465 U.S. 783 (1984) and cites the decision in *CYBERsitter, L.L.C. v. People's Republic of China*, 805 F. Supp. 958, 968-974 (C.D. Cal. 2011), in which the district court applied the Ninth Circuit Court of Appeals's expansive interpretation of *Calder* to conclude that it had specific jurisdiction over defendant Chinese companies. The *Calder* effects test provides that:

> "a defendant's tortious acts can serve as a source of personal jurisdiction only where the plaintiff makes a prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—[in the forum state]."

*Johnson*, 614 F.3d at 796 (quoting *Lindgren v. GDT,* 312 F. Supp. 2d 1125, 1132 (S.D. Iowa 2004)); *see Viasystems, Inc.*, 646 F.3d at 595 (quoting *Johnson*, 614 F.3d at 796). The *Calder* effects test "allows the assertion of personal jurisdiction over non-resident defendants whose acts 'are performed for the very purpose of having their consequences felt in the forum state.'" *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1390–91 (8th Cir. 1991) (quoting *Brainerd v. Governors of Univ. of Alberta,* 873 F.2d 1257, 1260 (9th Cir. 1989)). Moreover, the Eighth Circuit Court of Appeals, unlike the Ninth Circuit Court of Appeals, construes the *Calder* effects test narrowly. *See Johnson*, 614 F.3d at 796-97 ("Additionally, even if the effect of Heineman's alleged statement was felt in Missouri, we have used the *Calder* test merely as an additional factor to consider when evaluating a defendant's relevant contacts with the forum state. . . We therefore construe the *Calder* effects test narrowly, and hold that, absent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction."); *see also*

*Furminator, Inc. v. Wahba*, No. 4:10CV01941, 2011 WL 3847390, at *3 (E.D. Mo. Aug. 29, 2011) (noting that the Eighth Circuit Court of Appeals construes the *Calder* effects test narrowly); *Oticon, Inc. v. Sebotek Hearing Sys., L.L.C.,*, ---F. Supp.---, 2011 WL 3702423, at *15 (D.N.J.  Aug. 22, 2011) (noting in *Johnson*, the Eighth Circuit Court of Appeals expressly clarified its position that it construes the *Calder* effects test narrowly); *Express Scripts, Inc. v. Care Continuum Alliance, Inc.*,  No. 410CV2235CDP,  2011 WL 2199967, at *4 (E.D. Mo. June 7, 2011) (observing that "[t]he Eighth Circuit has narrowly construed the *Calder* effects test. . .").  Although I accept as true Fraserside's allegations that defendants intentionally infringed Fraserside's registered copyrights and trademarks, these allegations, alone, fail to demonstrate that defendants "uniquely or expressly aimed" their tortious acts at Iowa.  *Johnson,* 614 F.3d at 796.  At best, all Fraserside has established, for jurisdictional purposes, is that defendants intentionally continued to infringe Fraserside's copyrights and trademarks even after they were made aware of them by their continued operation of the SunPorno website. That alone is insufficient to establish the express-aiming prong of the *Calder* test.  In *Calder*, the court reasoned that jurisdiction in California was proper where the publisher of a allegedly libelous newspaper article had its "largest circulation" in that state.  *Calder*, 465 U.S. at 790.  Here, by contrast, Fraserside cannot point to a single user of SunPorno's website in Iowa.[6]  Although SunPorno's website is both commercial and interactive, as an Iowa

---

[6]Fraserside argues that SunPorno's website contains "geographically targeted advertising." Fraserside's Br. at 16.  Specifically, Fraserside points to the fact that when one of its employees, in Iowa, logged onto SunPorno's website, pop-up advertisements for www.adultfriendfinders.com and www.sexfinder.com appeared.  These pop-up advertisements mentioned finding "sexy girls near Northwood" and "Fuck Buddies Near Northwood".  The flaw in this argument is that www.adultfriendfinders.com and
(continued…)

district court noted in a case presenting similar facts, such a website "is arguably no more directed at Iowa than at Uzbekistan." *Lindgren v. GDT, L.L.C.,* 312 F. Supp. 2d 1125, 1131 (S.D. Iowa 2004). In *Lindgren*, the district court concluded that because the website could be accessed anywhere, including Iowa, "its existence does not demonstrate an intent to purposefully target Iowa." *Id.; see Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.,* 395 F.3d 1275, 1281 (Fed. Cir. 2005) (holding that defendant's website was "not directed at customers in the District of Columbia, but instead is available to all customers throughout the country who have access to the Internet"); *ESAB Group, Inc. v. Centricut, L.L.C.,* 34 F. Supp. 2d 323, 331 (D.S.C. 1999) ("While it is true that anyone, anywhere could access Centricut's home page, including someone in South Carolina, it cannot be inferred from this fact alone that Centricut deliberately directed its efforts toward South

---

[6](…continued)

[www.sexfinder.com](http://www.sexfinder.com) are distinct websites from [www.SunPorno.com](http://www.SunPorno.com)   From the limited record before me, it appears that both of these websites offer on-line adult-oriented social networking services to individuals.  Moreover, there is no allegation that either website is affiliated with Letyagin or SunPorno.  Thus, these advertisements are not for SunPorno's services and SunPorno merely provides banner advertising space on its website for unrelated services and are insufficient to establish personal jurisdiction.  *See Dynetech Corp. v. Leonard Fitness,* 523 F. Supp. 2d 1344, 1347 (M.D. Fla. 2007) (holding that "the fact that the website of a company that sells products in Florida can be reached via a link on Defendants' website is too narrow a thread on which to find a meaningful "contact' for the purposes of due process.").   As one district court recognized, if it were otherwise all websites "that feature advertisements may become subject to personal jurisdiction in any state regardless of whether they have actually directed their own business activities to the forum." *Zamora Radio, L.L.C. v. Last.fm Ltd.*, No. 09-20940-CIV, 2011 WL 2580401 at *8 (S.D. Fla. June 28, 2011)  (dismissing complaint for lack of personal jurisdiction over defendant where website at issue allowed visitors to sign up for a newsletter, listen to live audio, post comments, and provided banner advertising space for unrelated products and services).

Carolina residents."). Thus, I conclude that Fraserside has failed to demonstrate that defendants actions were "'performed for the very purpose of having their consequences felt in the forum state.'" *Dakota Indus.*, 946 F.2d at 1390–91 (quoting *Brainerd,* 873 F.2d at 1260).

Assuming, *arguendo*, Fraserside could demonstrate that defendants' actions were aimed at Iowa and that the consequences of their actions were felt in Iowa, the *Calder* effects test is "merely an additional factor to consider when evaluating a defendant's relevant contacts with the forum state." *Johnson,* 614 F.3d at 796–97. I must also consider the five factors developed by the Eighth Circuit Court of Appeals in determining whether a nonresident defendant has sufficient minimum contacts with the forum state to exercise personal jurisdiction over it. As discussed above, I must consider: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing its residents a forum; and (5) the convenience of the parties. *See K-V Pharm. Co.*, 648 F.3d at 592; *Wells Dairy, Inc.*, 667 F.3d at 518 *Steinbuch*, 518 F.3d at 585-86; *Johnson*, 444 F.3d at 956. Of these factors, "the first three factors are of primary importance, and the last two are 'secondary factors.'" *Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 694 (8th Cir. 2002) (quoting *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 226 (8th Cir. 1987)). After considering these five factors, I conclude that Fraserside has not demonstrated that either defendant has sufficient minimum contacts with Iowa to justify exercising personal jurisdiction over them. Both defendants have a notable complete absence of contacts with the State of Iowa. Letyagin is a full-time resident of Europe. He has never resided in, or visited, Iowa. He does not maintain any servers in Iowa, does not advertise there, does not own any real estate in Iowa, and has never paid

17

taxes in Iowa.  SunPorno is a subsidiary of Ideal.  SunPorno has no employees in Iowa, and has never maintained a server in Iowa.  SunPorno has never owned any real-estate in Iowa and has never paid taxes in Iowa.  SunPorno has never had a bank account in Iowa.  Thus, the nature and quality of defendants' contacts with Iowa; the quantity of defendants' contacts with Iowa; and, the relation of the cause of action to their contacts, all decidedly weigh against exercising personal jurisdiction over them.  While Iowa has an interest in providing a local forum in which its resident corporations may litigate claims against non-residents, Iowa's "interest in providing its residents with a forum cannot make up for the absence of minimum contacts."  *Digi–Tel Holdings, Inc., v. Proteq Telecomms.(PTE), Ltd.*, 89 F.3d 519, 525 (8th Cir. 1996).  Additionally, the convenience of the parties is, at best, neutral given Fraserside's limited presence in Iowa and the unique burdens placed upon defendants having to defend themselves in a foreign legal system.  *See Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 114 (1987) (observing that "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.").  Thus, after considering all five relevant factors, I conclude that the exercise of specific personal jurisdiction over either defendant is inappropriate under the Iowa long-arm statute and fails to comport with due process.  Accordingly, viewing the circumstances of this case as a whole, Fraserside has failed to make a *prima facie* case of personal jurisdiction over either Letyagin or SunPorno.

### C.  Federal Long-Arm Statute

Fraserside, alternatively, argues that, even if it did not make a *prima facie* showing of personal jurisdiction under Iowa's long-arm statute, personal jurisdiction exists under

the federal long-arm statute found in Federal Rule of Civil Procedure 4(k)(2).[7]  *See United States v. Swiss American Bank, Ltd.,* 191 F.3d 30, 36 (1st Cir. 1999)(observing that Rule 4(k)(2) is "a sort of federal long-arm statute.").   Rule 4(k)(2) permits a court to exercise jurisdiction over a foreign defendant that is not subject to the jurisdiction of the courts of general jurisdiction of any state, as long as the plaintiff's claim arises under federal law and the exercise of personal jurisdiction would not offend due process.  *Oldfield v. Pueblo De Bahia Lora, S.A.,* 558 F.3d 1210, 1218-19 (11th Cir. 2009) (citing *Consol. Dev. Corp. v. Sherritt, Inc.,* 216 F.3d 1286, 1291 (11th Cir. 2000)).   "Rule 4(k)(2) was adopted to ensure that federal claims will have a U.S. forum if sufficient national contacts exist." *Synthes (U.S.A.) v. G.M. Dos Reis Jr.,* 563 F.3d 1285, 1295 (9th Cir. 2009).  Rule 4(k)(2) closed a loophole that existed prior to 1993.  *Synthes,* 563 F.3d at 1295.  As the advisory committee notes explain:

> Under the former rule, a problem was presented when the defendant was a non-resident of the United States having contacts with the United States sufficient to justify the application of United States law and to satisfy federal standards of forum selection, but having insufficient contact with any

---

[7]Rule 4(k)(2) states:

> **(2)     *Federal Claim Outside State-Court Jurisdiction*.** For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
> (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

FED. R. CIV. P. 4(k)(2).

> single state to support jurisdiction under state longarm
> legislation or meet the requirements of the Fourteenth
> Amendment limitation on state court territorial jurisdiction. In
> such cases, the defendant was shielded from the enforcement
> of federal law by the fortuity of a favorable limitation on the
> power of state courts, which was incorporated into the federal
> practice by the former rule. In this respect, the revision
> responds to the suggestion of the Supreme Court made in *Omni
> Capital Int'l v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 111,
> 108 S. Ct. 404, 98 L. Ed. 2d 415 (1987).

FED. R. CIV. P. 4(k)(2) advisory committee notes to 1993 amendment.   Specifically, Rule

4(k)(2) permits a court to exercise personal jurisdiction over a defendant if:   (1) the

plaintiff's claim arises under federal law; (2) the defendant is not subject to jurisdiction in

any state's courts of general jurisdiction; and (3) the exercise of jurisdiction comports with

due process.  *See Synthes (U.S.A.) v. G.M. Dos Reis Jr.,* 563 F.3d 1285, 1293–94 (9th

Cir. 2009); *see also World Tanker Carriers Corp. v. M/V Ya Mawlaya,* 99 F.3d 717, 720

(5th Cir. 1996); *see also Oldfield,* 558 F.3d at 1218-19.[8]   I take up each of these

requirements *seriatim.*

### 1.   *Claim arises under federal law*

Fraserside brings six claims, all of which arise under federal law:   copyright

infringement, in violation of 17 U.S.C. §§ 106 and 501 *et seq.*; contributory copyright

infringement, in violation of 17 U.S.C. §§ 106 and 501 *et seq.*; vicarious copyright

infringement, in violation of 17 U.S.C. §§ 106 and 501 *et seq.*; inducing copyright

infringement, in violation of 17 U.S.C. §§ 106 and 501 *et seq.*; false designation of origin,

in violation of 15 U.S.C. § 1125(a); and, dilution of trademark, in violation of 15 U.S.C.

---

[8]The Eighth Circuit Court of Appeals has not discussed Rule 4(2)(k).  Thus, I look
to decisions from the other federal courts of appeals for direction.

§ 1125(c). Since Fraserside has pled copyright and trademark claims, it is uncontested that those claims satisfy the first requirement of Rule 4(k)(2).

### 2. No state with personal jurisdiction over defendants

The second requirement of the Rule 4(k)(2) requires that defendants not be subject to personal jurisdiction in any state. Rather than requiring the plaintiff to meet the onerous burden of proving that a defendant is not subject to personal jurisdiction, most circuits have adopted the following approach:

> A defendant who wants to preclude the use of Rule 4(k)(2) has only to name some other state in which the suit could proceed. Naming a more appropriate state would amount to a consent to personal jurisdiction there. . . . If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other state where suit is possible, then the federal court is entitled to use Rule 4(k)(2). This procedure makes it unnecessary to traipse through the 50 states, asking whether each could entertain the suit.

*ISI Int'l, Inc. v. Borden Ladner Gervais L.L.P.,* 256 F.3d 548, 552 (7th Cir. 2001) (citations omitted); *see Touchcom, Inc. v. Bereskin & Parr,* 574 F.3d 1403, 1415 (Fed. Cir. 2009); *Holland Am. Line, Inc. v. Wartsila N.A.,* 485 F.3d 450, 461 (9th Cir. 2007); *Mwani v. bin Laden,* 417 F.3d 1, 11 (D.C. Cir. 2005); *Adams v. Unione Mediterranea Di Sicurta,* 364 F.3d 646, 651 (5th Cir. 2004). Because a majority of the federal courts of appeals have adopted this approach, I presume that the Eighth Circuit Court of Appeals would also follow it.

Defendants argue that Fraserside names Kansas and Ohio as states where defendants might be subject to personal jurisdiction. *See* Defendants' Reply Br. at 3. Defendants conclude from this that Rule 4(k)(2) does not provide a basis for personal jurisdiction over them. *See Touchcom, Inc.,* 574 F.3d at 1415 (noting that "the purposes of Rule 4(k)(2)

21

are best achieved when the defendant is afforded the opportunity to avoid the application of the rule when it designates a suitable forum in which the plaintiff could have brought suit."). Defendants' legal sleight of hand fails, however, because defendants, themselves, do not concede that they are subject to personal jurisdiction in either Kansas or Ohio. Rather, defendants argue that they are not subject to personal jurisdiction in any state. Given this argument, Rule 4(k)(2)'s second requirement is satisfied here.

### 3.    *Due process*

The third prong of Rule 4(k)(2) requires that the exercise of jurisdiction comport with due process. *Synthes,* 563 F.3d at 1293–94; *M/V Ya Mawlaya,* 99 F.3d at 720. The due process analysis under Rule 4(k)(2) is nearly identical to the traditional personal jurisdiction analysis, the only difference lies in that the forum under analysis shifts from Iowa to the United States as a whole. *See Synthes,* 563 F.3d at 1295; *Oldfield,* 558 F.3d at 1220; *Holland Am. Line, Inc.,* 485 F.3d at 463 (citing *Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1159 (9th Cir. 2006)). The minimum-contacts test for specific jurisdiction has the following three requirements:

> First, the defendant must have contacts related to or giving rise to the plaintiff's cause of action. Second, the defendant must, through those contacts, have purposefully availed itself of forum benefits. Third, the defendant's contacts with the forum must be such that it could reasonably anticipate being haled into court there.

*Fraser v. Smith,* 594 F.3d 842, 851 (11th Cir. 2010); *see Synthes,* 563 F.3d at 1295 (outlining three factor test for specific jurisdiction which considers whether (1) the defendants have purposefully directed their activities at residents of the United States; (2) whether the claim arises out of or relate to the defendants' activities with the forum; and (3) whether the assertion of personal jurisdiction over the defendants would be fair and

reasonable).

Turning to the facts of this case, Fraserside alleges that defendants have the following contacts with the United States:

- Eighteen percent of SunPorno's website's 2,500,000 daily visitors are from the United States.

- defendants have ongoing contractual relationships with United States residents.

- defendants' contacts with the United States are for the purpose of displaying Fraserside's adult films.

- SunPorno's website provides its membership fees in U.S. dollars.

- SunPorno's website is controlled by a nameserver in Kansas.

- SunPorno's website is hosted in Ohio.

Plaintiff's Br. at 9, 21, and 23.  Defendants deny these factual allegations but do not offer contradictory evidence.   While these allegations might support specific jurisdiction over defendants, Fraserside has not provided me with an adequate evidentiary basis to accept them.[9]   However, Fraserside, alternatively contends that, even if it did not make a *prima*

---

[9]Fraserside supports these assertions with naked printouts from various third-party websites, including IP Trace, www.ip-address.com, and WhoIs, www.whois.comaintools.com.   Rule 901 of the Federal Rules of Evidence requires authentication of evidence.   Private web-sites, however, are not self-authenticating. *Martinez v. America's Wholesale Lender*, 446 Fed. App'x 940, 944 (9th Cir. 2011); *Foreword Magazine v. OverDrive, Inc.*, No. 1:10-CV-1144,  2011 WL 5169384, at *3 (W.D. Mich. Oct. 31, 2011);  *St. Luke's Cataract and Laser Institute, P.A. v. Sanderson*, No. 8:06–cv–223–T–MSS, 2006 WL 1320242, at *2 (M.D. Fla. May 12, 2006); *Lorraine*
(continued…)

*facie* showing of personal jurisdiction, I should delay ruling on defendants' motion and permit Fraserside limited jurisdictional discovery.

The Federal Rules of Civil Procedure provide for liberal discovery. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984) ("Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes."). Courts "have broad discretion in [their] resolution of discovery problems that arise in cases pending before [them]." *In re Multi–Piece Rim Prods. Liab. Litig.*, 653 F.2d 671, 679 (D.C. Cir. 1981). When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery. *See Viasystems, Inc. v. EBM-Papst St. Georgen GMBH & Co.*, 646 F.3d 589, 598 (8th Cir. 2011) (noting that "'[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery.'") (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1074 n.1 (8th Cir. 2004) (quoting in turn *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003)); *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 716 n.3 (4th Cir. 2002) (affirming district court's refusal

---

[9](...continued)
*v. Markel Am. Ins. Co.,* 241 F.R.D. 534, 556 (D. Md. 2007). To authenticate printouts from a website, the party proffering the evidence must produce "some statement or affidavit from someone with knowledge [of the website] . . . for example [a] web master or someone else with personal knowledge would be sufficient." *In re Homestore.com, Inc. Sec.Litig.,* 347 F. Supp. 2d 769, 782 (C.D. Cal. 2004). Here, Fraserside has not offered any such materials which might meet the requirements for authentication. Even if Fraserside had properly authenticated the internet printouts, whether the information drawn from those printouts constitutes inadmissible hearsay remains. Since I have concluded that website printouts are not properly authenticated, it is unnecessary to decide the hearsay question at this time.

to allow plaintiff to engage in jurisdictional discovery where plaintiff's request was based on "conclusory assertions"); *McLaughlin v. McPhail,* 707 F.2d 800, 806 (4th Cir. 1983) (holding that district court did not abuse its discretion in denying jurisdictional discovery where plaintiff "offered nothing beyond his bare allegations that the defendants had had significant contacts with the [forum] state of Maryland" (internal quotation marks omitted)); *see also Rich v. KIS Cal., Inc.,* 121 F.R.D. 254, 259 (M.D.N.C. 1988) ("[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery confined to issues of personal jurisdiction should it conclude that such discovery will be a fishing expedition.").

Presumably conclusive information regarding Letyagin's relationship to SunPorno and SunPorno's contacts with the United States are available to Fraserside only through discovery. *See Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 455 (3d Cir. 2003) (noting that "any information regarding Step Two's intent vis-a-vis its Internet business and regarding other related contacts is known by Step Two, and can be learned by Toys only through discovery"). Because Fraserside has proffered facts that, if proven, would affect my exercise of jurisdiction over defendants, I grant Fraserside's request for jurisdictional discovery. To avoid potential disputes over the scope of Fraserside's discovery, I note that discovery under the Federal Rules of Civil Procedure is "'to be accorded a broad and liberal treatment.'" *Credit Lyonnais, S.A. v. SGC Int'l, Inc.*, 160 F.3d 428, 430 (8th Cir. 1998) (quoting *Hickman v. Taylor,* 329 U.S. 495, 507 (1947)). This maxim applies equally when discovery is directed to personal jurisdiction. *See Edmond v. United States Postal Serv. Gen. Counsel*, 949 F.2d 415, 425 (D.C. Cir. 1991); *Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 788 (D.C. Cir. 1983); *Wyatt v. Kaplan,*

686 F.2d 276, 283-84 (5th Cir. 1982) (Wisdom, J.).  Accordingly, Fraserside's discovery may inquire into all areas that are reasonably likely to aid in resolution of the jurisdictional issue here.  Such jurisdictional discovery must be completed **on or before November 30, 2012.**

### III.  CONCLUSION

For the reasons previously discussed, defendants do not have sufficient "minimum contacts" with Iowa to permit jurisdiction under Iowa's long-arm statute.  However, because I grant Fraserside's request for jurisdictional discovery, I need not determine, at this time, whether personal jurisdiction exists under the federal long-arm statute found in Federal Rule of Civil Procedure 4(k)(2).  Defendants' Motion to Dismiss for lack of personal jurisdiction is denied without prejudice.

**IT IS SO ORDERED.**

**DATED** this 7th day of August, 2012.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA